Colleen O'Brien (Bar No. 215514)
O'Brien & Kelleher, LLP
1655 N. Main St, Suite 220
Walnut Creek, CA 94596-4642
Telephone: (925) 280-1250
Fax: (775) 249-9120

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BUTLER, et al., | Case No.: C07-04369 CRB |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER AND REQUEST FOR SANCTIONS |
| v. | |
| UNITED AIR LINES, INC., | Ex Parte Application Filed: December 28, 2007 |
| Defendant. | |

This is an interim response to Defendant's Ex Parte Application for a Protective Order. Plaintiff's counsel is aware that this court will likely reject or have already rejected Defendant's *ex parte*, unnoticed motion/application as improperly presented and filed but submits this in the event the court does not reject Defendant's application outright. In addition, the court must be made aware immediately of Mr. Worthe's bad faith submission.

Moreover, the moving papers presented by Mr. Worthe and United are patently frivolous on their face, procedurally defective, and so obviously brought for an improper purpose—namely, to harass Plaintiffs' counsel and Plaintiff Colleen O'Brien—that this Court will likely dismiss them without a hearing on the contents. Should this court schedule a hearing on the unnoticed motion, Plaintiffs will file a larger response with declarations and citations, responding to the many inaccuracies and outright mendacity displayed throughout Defendant's submissions. **For now, Plaintiffs supply this list of rebuttal points for the**

court's convenience, for the record, and in the hope the court will sanction Mr. Worthe, Worthe, Hanson & Worthe, and United for making this bad-faith application.

1.   The meet-and-confer resolved all Defendant's issues; thus this motion was filed by Mr. Worthe in bad faith.

Defendant's counsel, Todd Worthe, quotes FRCP 26(c) repeatedly for the proposition that a motion for a protective order "must include a certification that the movant in good faith conferred or attempted to confer with other affected parties *in an effort to resolve the dispute without court action*". *See e.g.,* DEFENDANT'S P&A, 4:14:20.  His meet-and-confer declaration (DECLARATION OF TODD C. WORTHE, ESQ. IN SUPPORT OF EX PARTE APPLICATION FOR PROTECIVE ORDER) states at paragraph 3 that he "attempted" to meet and confer to comply with local Rule 37-1, by sending a "cease and desist letter" on December 21, 2007. He says, "A telephone conversation ensued on that same date. It was uneventful." He then attaches as Exhibit B to his declaration a fax from Colleen O'Brien dated that same day.  That fax he provided and presumably read reads in relevant part:

> As I told you on the phone during our meet-and-confer, you do not need a protective order preventing me from contacting Ms. Afkari and other present UAL employees because I do not intend to contact them. I do not know why this assurance is not enough for you, but let me say it again: <u>I have no intention of contacting her or other known present employees of United as we move forward.</u> I am pleased that you are going to secure her for a deposition in January. …Again, I will respect your request that I not contact UAL employees as a professional courtesy, which is what you asked me for in your letter of December 20—even though I do not think you have the authority to make this demand.

Mr. Worthe's interpretation of the same meet-and-confer reads as follows: "During our conversation O'BRIEN advised me that the Motion for Protective Order was unnecessary as she would not be contacting Ms. Afkari again.  She followed up the conversation with a correspondence." DECLARATION OF TOOD C. WORTHE, ESQ. IN SUPPORT OF MOTION FOR PROTECTIVE ORDER, paragraph 6.

Thus, everyone agrees this "dispute" was resolved *in toto* by the meet-and-confer, which produced precisely the result Mr. Worthe wanted—exactly the result he asked for in his "cease and desist" letter—and he filed this needless motion anyway.

2. <u>Similarly, Local Rule 37-1 is also cited to, and then ignored by Mr. Worthe.</u>

Local Rule 37-1, Procedures for Resolving Disputes, states:

> (a) Conference Between Counsel Required. The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues.

All the disputed issues were resolved by the meet-and-confer, as demonstrated by Plaintiffs' counsel's letter and Mr. Worthe's admissions, above. Mr. Worthe states that Ms. O'Brien "attempted to justify her actions by hiding behind Rule 2-100". Nothing could be further from the truth—she voluntarily waived her First Amendment rights as a party—which are expressly acknowledged in the Discussion to Rule-2-100—in order to get the depositions of Ms. Afkari and others accomplished and to get on with the case.

3.   <u>Local Rule 7-10 is cited to repeatedly by Mr. Worthe as a basis for this ex parte motion, and ignored.</u>

That rule provides:

> *Ex Parte* Motions. Unless otherwise ordered by the assigned Judge, a party may file an *ex parte* motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an *ex parte* motion in the circumstances and the party has complied with the applicable provisions allowing the party to approach the Court on an *ex parte* basis. The motion must include a citation to the statute, rule or order which permits the use of an *ex parte* motion to obtain the relief sought.

Defendant's motion does not include a citation to a statute, rule, or order which permits the use of an *ex parte* motion to obtain the relief sought here. None of the documents filed by Mr. Worthe comply with Local Rule 7-1 regarding allowable types of motions. This is simply an improper and bad faith ex parte communication with the court in a blatant and shameful attempt to harass and embarrass Ms. O'Brien by attacking her personal and professional character.

4.   <u>Mr. Worthe does not make any of the required allegations necessary for an ex parte application.</u>

The ex parte papers should show the court: (1) that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and (2) that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Mission Power Eng'g Co. v. Continental Cas. Co.* 883 F.Supp. 488, 492 (C.D.Cal. 1995), *aff'd,* 103 F.3d 139 (9th Cir. 1996).

Mr. Worthe does not attempt to allege irreparable harm or discuss his lack of fault in creating the crisis because there is no harm to his "cause" and he manufactured the "crisis" himself. There is no allegation that Ms. O'Brien contacted any United employee except Afkari and further no allegation that she contacted her in the eleven days between December 17 and when the Defendant's motion was filed on December 28.

5. <u>Mr. Worthe cites to no authority for anything he asks for in his application, and further acknowledges that Cal. Rule of Professional Conduct 2-100 is not an authority for him to obtain the relief sought.</u>

California Rule of Professional Conduct 2-100, cited to by Mr. Worthe, states in its Discussion:

> Rule 2-100 is not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation, and nothing in the rule prevents a member from advising the client that such communication can be made. **Moreover, the rule does not prohibit a member who is also a party to a legal matter from directly or indirectly communicating on his or her own behalf with a represented party. Such a member has independent rights as a party which should not be abrogated because of his or her professional status. To prevent any possible abuse in such situations, the counsel for the opposing party may advise that party (1) about the risks and benefits of communications with a lawyer-party, and (2) not to accept or engage in communications with the lawyer-party.**

Mr. Worthe knows exactly what this rule says; he explains it at length: "A caveat to this general rule is where an attorney is representing himself or herself in a matter. He or she is permitted to communicate with the represented opposing party directly and indirectly. See, Rule 2-100(c). California recognizes attorney-litigants have independent rights as a party to an action which should not be abrogated because of her (sic) professional status." DEFENDANT'S MOTION FOR A PROTECTIVE ORDER, at 5:16:20.

But Mr. Worthe chooses to ignore his own citation and goes on to argue that the rule means the opposite of what it says: that O'Brien's rights as a party <u>are</u> completely abrogated by her status as a lawyer. He claims the Rule divides O'Brien into two separate roles: "attorney-litigant" and "attorney-attorney", and that "attorney-attorney's" status completely abrogates "attorney-litigant's" rights. Of course, he performs all this explication without any citation or claim to authority.

Even Mr. Worthe calls his bogus analysis as a "grey area". All his authorities should have told him that the issue is black-and-white and that his motion is baseless. Throughout his papers, he cites to nothing to support the relief he requests—either for the protective order or the "disclosure" order. He uses only unsourced argument of his own invention because his goal is not to persuade or to protect his client. He means to harass and annoy Ms. O'Brien by attacking her personally and professionally to the court for an improper purpose: in order to persuade her to drop this action, because he knows his client is in the wrong, and because he knows he and United's other lawyers have misrepresented to the court that Plaintiffs' tickets were "canceled" and their money "refunded".

His bad faith extends to making up "facts", because he does not know anything about the facts of the case. In a particularly ludicrous example of fiction writing, after claiming at length that that Ms. O'Brien misrepresented herself and her identity and lied to Ms. Afkari about her status as an attorney—cannily referencing, all the while, for no discernable reason, "her attorneys"—and using the misdirecting pseudonym of her actual first name, "Colleen", Mr. Worthe explains how Ms. Afkari spontaneously divines O'Brien's true status as an attorney and her true purpose in calling Afkari—even though Mr. Worthe has alleged O'Brien has deliberately kept this status and purpose concealed from Afkari. After exposing and confronting "Colleen" with the fact of her law license, United Customer Service Representative Ms. Afkari then delivers a one-two punch by channeling Mr. Worthe's nuanced insights into California Rule of Professional Conduct Rule 2-100, and confronts "Colleen" with the attorney-litigant/attorney-attorney distinction:

> Ms. Afkari informed "Colleen" that she would have no further direct communication her (sic) as it appeared she was representing both herself, and her husband, Noah Butler. Ms. Afkari directed O'BRIEN to United Airlines Refund and Legal Departments.

DEFENDANT'S MOTION at 3:6-8.

In another example of bald fabrication, Mr. Worthe describes the airport scene for the court thusly:

> This action arises from the purchase, then cancellation, of airplane tickets by Plaintiff, Colleen O'Brien ("O'BRIEN"), a licensed California attorney, and her husband, Noah Butler (hereafter, "Plaintiffs"). Following the cancellation of the couples' airline tickets, Plaintiffs attempted to use the voided tickets. **When Defendant, United Airlines, refused to allow them to board without a valid ticket, Plaintiffs became indignant and enraged. Not long after, O'BRIEN filed suit on behalf of herself and her husband, Plaintiff Noah Butler.**

DEFENDANT'S MOTION at 2:6-11.

There is no source or citation for the enragement passage, because Ms. Afkari, the actual witness, states she has no memory or knowledge of the incident:

> Your declarant was unfamiliar with this situation and could not understand why this contact was being done at your declarant's personal residence.

Afkari Decl. at 2:4-5.

The complaint on file, which Mr. Worthe has never read, reveals that Ms. O'Brien filed suit <u>after an entire year</u> of attempting without success to talk to United about its breach. Mr. Worthe does not know when the flight was and when the complaint was filed. He does not know anything about the facts of the case. He does not need to—his job is to harass Plaintiffs.

In a third, artless example, Mr. Worthe suborns perjury from Ms. Afkari:

> The telephone calls from "Colleen" have been persistent, annoying and incredibly frustrating. The name "Colleen" and the phone contact which comes up on the Caller I.D. is 925-465-0448.

Afkari Decl. at 3:11-13.

At the risk of pointing out the obvious, Plaintiffs offer to the court what that neither the name "Colleen" or "Colleen O'Brien" appears one's caller id when one is phoned from the law offices of O'Brien and Kelleher, LLP, or from any other number.

6.   <u>Mr. Worthe intentionally misleads when he discusses Ms. Afkari as a "represented party", describes her as "his client", and describes this status/relationship as known to Plaintiff's counsel.</u>

Cal. Rule of Professional Conduct 2-100 prohibits communications **about the subject of the representation** with a party **the member knows to be represented by another lawyer in the matter.** A party includes a **present employee** in connection with **a matter which may be binding or imputed to the organization for purposes of civil liability.** *Id.*

Mr. Worthe tells the court:

> Even more disturbing is the fact that O'BRIEN and your declarant were attempting to secure dates for Ms. Afkari's deposition and she knew on December 17, 2007, that Ms. Afkari could be reached through this office in care of your declarant. The initial disclosures provided by UNITED lists (sic) all employees "C/O Worthe Hanson & Worthe.

Mr. Worthe would do better to read his own letters. On December 4, 2007, in one of several letters written by Mr. Worthe in order to evade scheduling depositions and conferring about discovery, he wrote:

> I am unaware of anybody by the name of Ms. Afkari, and you have not provided a first name. United Airlines, Inc. is attempting to locate this person to determine whether she still works for the company. This may take some time and may not be done prior to your unilaterally chosen date of Wednesday, December 5, 2007...I will get back to you regarding dates and the PMK once you have provided sufficient detail on the subject matter(s).

Exhibit 1.

According to Mr. Worthe, this letter means he was *representing* Ms. Afkari as of December 4—even though he did not say that he was, even though he never heard of her, even though he did not know her name or where she was or whether she worked for United or not. The sacred privileged attorney-client relationship he describes at length in his papers existed—by way of thinking—between the two—even though neither of them actually knew it. According to Mr. Worthe, Plaintiff's counsel was not supposed to interpret this passage as a suggestion that the burden was on Plaintiffs to find Afkari and to supply Afkari's first name. According to Mr. Worthe, Plaintiffs' counsel was instead supposed to interpret this passage as conveying that Ms. Afkari was a present, represented employee of United, even though he states neither Worthe nor United knew who she was, where she was, or whether she was still a United employee.

Mr. Worthe also fails to tell the court that Plaintiff's counsel had repeatedly requested in writing information regarding Ms. Afkari's status and contact information, and that Mr. Worthe failed to respond to requests for input about how to procure Ms. Afkari for deposition. He also knew Plaintiff's counsel was preparing to subpoena Ms. Afkari because she did not believe her to be a current United employee:

> December 4, 2007: I do not have a first name for Ms. Afkari because she did not give it to me. She was working the United counter at Oakland airport on the evenings of July 18 and 19, 2006. It should not be that difficult for United to figure out who she **is so I can serve her with a subpoena.**

Exhibit 2.

> December 10, 2007: I believe Ms. Afkari (or Afkart's) first name is "Monica". Her employee ID Number **when she worked for United** was U121217. **Please let me know one way or the other if she still works for United and if I should notice her deposition through you. If not, I will just subpoena her.**

Exhibit 3.

> December 14, 2007: On another matter, I have not heard from you regarding Ms. Afkart. **I am going to subpoena Ms. Afkart for a deposition in Walnut Creek.** Please give me three dates at the end of December when you are available.

Exhibit 4.

> December 17, 2007: Finally, I have not heard from you about Monica Afkari (Afkart), United employee number U121217. **Please let me know her last known address so I can subpoena her.**

Exhibit 5.

Finally, Mr. Worthe misrepresents the facts in his declaration when he states that the "Initial Disclosures provided by UNITED lists (sic) all employees 'C/O Worthe Hanson & Worthe'." That disclosure does not say that, and it does not list Afkari.

***

This is by no means an exhaustive list of the reasons these motions should be rejected outright. Plaintiffs request that this court deny the motions now, and issue an order finding that Mr. Worthe acted in bad faith in filing these motions, and pursuant to its inherent powers, the local rules, and/or 28 U.S.C. section 1927, sanction Mr. Worthe and Defendant United Air Lines, Inc. for filing such an obviously frivolous, harassing, unsupported, procedurally

1    inappropriate ex parte motion and other papers. A district court has the inherent power to
2    sanction bad-faith conduct. *Earthquake Sound Corp. v. Bumper Indus.* 352 F3d 1210, 1220
3    (9th Cir. 2003) (awarding attorney's fees).

4         Mr. Worthe told Plaintiff's counsel he needed to meet and confer before filing a motion
5    for a protective order preventing her from contacting Ms. Afkari and other present United
6    employees. To him it was an entirely pro forma requirement because he was determined to file
7    this motion no matter what the result of that conversation. Plaintiff's counsel pointed him to
8    the applicable Rule of Professional Conduct; he had never read it. As a gesture of good will,
9    Plaintiff's counsel offered him the exact relief he wanted—relief to which he was not
10   entitled—as a professional courtesy. Ms. O'Brien voluntarily agreed to be bound by the
11   stricter professional standard, even though she did not have to agree to waive her constitutional
12   rights as a party. She did so in order to keep the peace, to save time, and to get discovery
13   accomplished, and as a professional courtesy to Mr. Worthe. Mr. Worthe responded to that
14   olive branch by vindictively filing this spiteful and mendacious motion in response. This court
15   should act to stop Mr. Worthe's continued bad-faith tactics, defiance of and contempt for rule
16   and procedure.

17        Federal courts have the inherent power to levy sanctions, including attorney's fees, for
18   willful disobedience of a court order, or when the losing party has acted in bad faith,
19   vexatiously, wantonly, or for oppressive reasons. In addition, a court may assess sanctions
20   against counsel who willfully abuse judicial processes. *Aloe Vera of Am., Inc. v. United States*,
21   376 F.3d 960, 966 (9th Cir. 2004); *Fink v. Gomez* 239 F.3d 989, 991 (9th Cir. 2001). If the
22   court declines to award Plaintiffs' counsel her attorney's fees as a sanction against Defendant
23   and its counsel, Plaintiffs will serve a Rule 11 motion separately and file it with this court if
24   Mr. Worthe refuses to withdraw these papers.

25
26                                                    Respectfully submitted,
27   Date: Dec. 31, 2007
28                                                    Colleen O'Brien
                                                      O'Brien & Kelleher, LLP

9

# EXHIBIT 1

# WORTHE HANSON & WORTHE
## A LAW CORPORATION

THE XEROX CENTRE
1851 EAST FIRST STREET
NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600
FACSIMILE: (714) 285-9700
info@whwlawcorp.com

TODD C. WORTHE
PARTNER

December 4, 2007

CLIENT NO. 87216

DIRECT DIAL: (714) 955-6960
tworthe@whwlawcorp.com

**Via Facsimile and U.S. Mail:**
Colleen O'Brien, Esq.
O'Brien & Kelleher, LLP
1655 N. Main St. Ste. 220
Walnut Creek, CA 95496

Re:    *O'Brien/Butler v. United Airlines, Inc.*

Dear Ms. O'Brien:

I have your e-mail of December 3, 2007. In the future please send all correspondence relative to discovery matters via U.S. Mail. I appreciate that e-mail circumvents the delay, however, there are many times when I am out of the office, including Monday, December 3, 2007.

I am unaware of anybody by the name of Ms. Afkari, and you have not provided a first name. United Airlines, Inc., is attempting to locate this person to determine who she is and whether she still works for the company. This may take some time and may not be done prior to your unilaterally chosen date of Wednesday, December 5, 2007. With respect to the PMK, why don't you prepare your Notice and advise us of the subject matters and documentation, as is the normal custom and practice and we will provide someone at that time. Again, we cannot respond within your limited requested time frame.

December 2007, is an incredibly busy month for this office. There are several depositions and many Trial dates scheduled for January, 2008. Since the court has imposed a Motion for Summary Judgment date of February 29, 2008, and by its required statutory notice; these depositions can take place before your Opposition would be due in February of 2008.

I will endeavor to complete these depositions in December. However, with the holidays December 24 through December 26, 2007, and December 31, 2007 and January 1, 2008, rapidly approaching, it does not appear possible that someone from Chicago, Illinois would be able to

WORTHE HANSON & WORTHE
A LAW CORPORATION

Colleen O'Brien
O'Brien/Butler v. United Airlines, Inc.
Page 2

travel on your limited time schedule.

I will get back to you regarding dates and the PMK once you have provided sufficient detail on the subject matter(s).

With respect to your credit card information, United Airlines, Inc., has absolutely no reason to disclose it publically and/or exposing you to "fraud."

I look forward to hearing from you.

Very truly yours,

WORTHE HANSON & WORTHE

By: _____
TODD C. WORTHE

TCW:gmf

# EXHIBIT 2

# O'BRIEN & KELLEHER, LLP

### ATTORNEYS AT LAW
### WALNUT CREEK • VACAVILLE

**Via First Class Mail**

December 4, 2007

Todd C. Worthe
Worthe, Hanson & Worthe
1851 E. First Street, 9th Floor
Santa Ana, CA 92705

Dear Mr. Worthe,

Enclosed please find a Deposition Notice of the PMK with Request for Documents for January 8, 2008. As I said in my email, I would appreciate taking this deposition in December vice January because I am in trial at the beginning of February and will not be able to take depositions then. If we cannot work out a date for December, then this guarantees I will have the deposition in plenty of time for the Summary Judgment opposition.

I have included a Notice of Unavailability as I am in trial starting on January 28 and expect it should last three weeks.

I do not have a first name for Ms. Afkari because she did not give it to me. She was working the United counter at Oakland airport on the evenings of July 18 and 19, 2006. I think she was in charge. It should not be that difficult for United to figure out who she is and to give me her name so I can subpoena her.

Very Truly Yours,
**O'Brien & Kelleher, LLP**

Colleen O'Brien
O'Brien & Kelleher, LLP
Attorneys at Law
1655 N. Main St, Suite 220
Walnut Creek, CA 94596-4642
Phone: (925) 280-1250

# EXHIBIT 3

O'BRIEN & KELLEHER, LLP

ATTORNEYS AT LAW

WALNUT CREEK • VACAVILLE

**VIA OVERNIGHT MAIL**

December 10, 2007

Todd C. Worthe, Esq.
Worthe, Hanson & Worthe
1851 E. First Street, 9th Floor
Santa Ana, CA 92705

Re: *Butler v. UAL*, NDCA, C 07-04369

Dear Mr. Worthe,

Enclosed please find Plaintiffs' First Sets of Requests for Admissions, Special Interrogatories, and Request for Inspection and Production of Documents. I read in your letter of December 4 that your office is very busy in December and January. That is unfortunate (and fortunate); however, the court-imposed deadline for dispositive motions makes it imperative for me to get all the requested discovery from your client by very early January. The court said in its order after CMC that discovery can go forward and set tight deadlines for dispositive motions with an eye toward trial. I will need all this discovery in early January not just for the opposition to your summary judgment motion, but the MSJ I anticipate filing which will also be due in January. My time is extremely limited as I have a jury trial scheduled at the end of January. I also do not want to pay for any rush transcripts so I urge that we plan ahead. This means I will not be able to grant any extensions of time on my discovery requests, and you should prioritize on all these requests accordingly.

I believe Ms. Afkari (or Afkart's) first name is "Monica". Her employee ID Number when she worked for United was U121217. Please let me know one way or the other if she still works for United and if I should notice her deposition through you. If not, I will just subpoena her.

I do not believe the information I obtained from you is comprehensive. For example, I only have the Electronic Ticket Information System for one ticket, not two. I am also missing at least one letter from Elena Daniel from November of 2006. Most importantly, the documents you have provided to me are incomplete. I do not have the entire PNR for ticket numbers 0162140207653 and 0162140207654, and I do not have the entire electronic ticket history/itinerary for these reservations. In fact, you 26(f) disclosures indicate that you have provided the PNR for a ticket number "0164066700850". Please provide complete copies of these documents. I am happy to confer with you by telephone if any of these items are unclear. Thank you for your prompt attention to these requests.

December 10, 2007

Very Truly Yours,
**O'Brien & Kelleher, LLP**

Colleen O'Brien
Attorney for Plaintiffs

EXHIBIT  4

O'BRIEN & KELLEHER, LLP

ATTORNEYS AT LAW

WALNUT CREEK • VACAVILLE

**VIA FIRST CLASS MAIL**

December 14, 2007

Todd C. Worthe, Esq.
Worthe, Hanson & Worthe
1851 E. First Street, 9th Floor
Santa Ana, CA 92705

Re: *Butler v. UAL*, NDCA, C 07-04369

Dear Mr. Worthe,

Enclosed please find a deposition notice for the custodian of records on December 28, 2007. I am serving this because I do not believe the information I obtained from you is comprehensive, and I have not received a response to my last letter asking you for a complete copy of the PNR and associated documents. I will need complete copies of the PNR *before* the deposition of the PMK in January, so I can look at them in advance. For example, I only have the Electronic Ticket Information System for one ticket, not two. I am also missing at least one letter from Elena Daniel from November of 2006. Most importantly, the documents you have provided to me are incomplete. I do not have the entire PNR for ticket numbers 0162140207653 and 0162140207654, and I do not have the entire electronic ticket history/itinerary for these reservations. In fact, your 26(f) disclosures indicate that you have provided the PNR for a ticket number "0164066700850". Please provide complete copies of these documents.

I am willing to work with you on the dates for these depositions, but you have not contacted me about what would work with your schedule and your client's. I cannot take depositions after January 18 as I have a jury trial scheduled at the end of January. Please let me know immediately what dates before January 18 we can do the PMK if you are not planning to make it on January 8.

Also, please advise me immediately who is the PMK who will be appearing at the deposition.

On another matter, I have not heard from you regarding Ms. Afkart. I am going to subpoena Ms. Afkart for a deposition in Walnut Creek. Please give me three dates at the end of December when you are available.

Finally, please find Set Three of Plaintiffs' Special Interrogatories.

Very Truly Yours,
**O'Brien & Kelleher, LLP**

Colleen O'Brien
Attorney for Plaintiffs

# EXHIBIT 5

# O'BRIEN & KELLEHER, LLP
## ATTORNEYS AT LAW
### WALNUT CREEK • VACAVILLE

**VIA FIRST CLASS MAIL**

December 17, 2007

Todd C. Worthe, Esq.
Worthe, Hanson & Worthe
1851 E. First Street, 9th Floor
Santa Ana, CA 92705

Re: *Butler v. UAL*, NDCA, C 07-04369

Dear Mr. Worthe,

I am in possession of your Notice of Objection to the Person Most Knowledgeable at United Air Lines, Inc. I have to admit I do not understand the document you sent, and no documents accompanied it. For example, I do not know why the PMK deposition notice fails to comply with FRCP 30.

We need to meet and confer by telephone immediately per the local rules about firm dates for depositions, when documents will be produced, and a procedure for resolving disputes. As of right now, I have depositions scheduled for UAL for December 28 and January 8. Unless you provide me with alternative dates within a week or two either way, I am planning to have a court reporter here on those dates. Also, your notice makes me think it is a good idea for us to confer before the depositions about the scope of them, and seek judicial intervention if necessary before the depositions.

One reason for us to confer is that I think there may be some overlap between the custodian of records and the PMK that may obviate the need for one of the depositions. But I need someone to explain, under oath, what I have as well as what I do not have and to authenticate the PNR and the ticket history documents. I welcome your suggestion about other ways to accomplish this, but I need to make sure I have a complete, authenticated, comprehensive history. I know I do not have that now.

Regarding request number 3, these requested documents are relevant to show the need for punitive damages, and possible injunctive relief, and the necessary application of consumer law remedies to this case. I need to talk to you more about this and perhaps we can narrow or clarify this request, but I will move to compel on this if the requested documents are not produced.

Finally, I have not heard from you about Monica Afkari (Afkart), United employee number U121217. Please let me know her last known address so I can subpoena her.

Please call me this week (17-21 December) so we can develop a discovery plan that makes sense and helps us to get our discovery accomplished in a timely manner.

Very Truly Yours,
**O'Brien & Kelleher, LLP**

Colleen O'Brien
Attorney for Plaintiffs