Colleen O'Brien (Bar No. 215514)
O'Brien & Kelleher, LLP
1655 N. Main St, Suite 220
Walnut Creek, CA 94596-4642
Telephone: (925) 280-1250
Fax:  (775) 249-9120
colleen@EastBayAttorneys.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BUTLER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br><br>Defendant. | Case No.: C07-04369 CRB<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION<br><br>Date: February 29, 2008<br>Time: 8:30 a.m.<br>Courtroom No.: 8, 19th Floor |

PLEASE TAKE NOTICE that on February 29, 2008, at 8:30 a.m., or as soon thereafter as counsel can be heard, in the courtroom of Honorable Charles R. Breyer, Courtroom No. 8 of the United States Court House, located at 450 Golden Gate Avenue, San Francisco, the Plaintiff Noah Butler, et al., through counsel, will move this Court, pursuant to *Federal Rules of Civil Procedure Rule* 56, for partial summary judgment on their claims for breach of contract and violation of the California Consumer Legal Remedies Act (CLRA) set forth in their complaint.

The motion will be made on the grounds that Defendant United breached its contract with Plaintiffs to allow them to fly after they purchased tickets and that United made a series of misrepresentations in violation of the CLRA, as set forth in the accompanying memorandum and supporting declaration. In this partial summary judgment motion, Plaintiffs seek compensatory damages, injunctive relief, and a finding of liability under the CLRA.

//

| | |
|---|---|
| Date: January 25, 2008 | Respectfully Submitted, |
| | _____ |
| | Colleen O'Brien |
| | O'Brien & Kelleher, LLP |
| | Attorney for Plaintiffs |

Case 3:07-cv-04369-CRB    Document 44    Filed 01/25/2008    Page 2 of 16

2
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

TABLE OF CONTENTS

I.   Introduction ................................................................................................5

II.  Statement of Issues to Be Decided ..............................................................5

III. Statement of Facts .......................................................................................6

       Standard on Summary Judgement ........................................................8

IV.  Argument.....................................................................................................8

       A. United Breached Its Contract with Plaintiffs ................................9

          1. United and Plaintiff O'Brien entered into a contract ...........10

          2. Plaintiffs fulfilled her side of the contract ...........................12

          3. Defendant United did not fulfill its side of the contract ......12

          4. Plaintiffs suffered monetary damages..................................12

          5. This Court should also order injunctive relief ....................12

       B. United Violated the California Consumer Legal Remedies Act..13

V.   Conclusion.................................................................................................15

**STATUTES**

California Civil Code § 1549 .......................................................................................................... 10

California Civil Code § 1750 .......................................................................................................... 13

California Civil Code § 1770(a) ........................................................................... 6, 8, 9, 13, 14, 15

California Civil Code § 1782(a) ..................................................................................................... 13

California Civil Code § 3300 .......................................................................................................... 12

California Consumer Legal Remedies Act (CLRA) ............................... 1, 5, 7, 8, 9, 12, 13, 14, 15

Federal Rules of Civil Procedure Rule 56 ................................................................................. 1, 8

**CASES**

*Broughton v. Cigna Healthplans*
   21 Cal.4th 1066, 1077 (1999) ................................................................................................ 13

*Far Out Prods. v. Oskar*
   247 F.3d 986, 997 (9th Cir. 2001) ......................................................................................... 8

*Fortyune v. Am. Multi-Cinema, Inc.*
   364 F.3d 1075, 1079-80 (9th Cir. 2004) ................................................................................ 8

*Harby v. Saadeh*
   816 F.2d 436, 438 (9th Cir. 1987) ......................................................................................... 11

*Hernandez v. Spacelabs Med., Inc.*
   343 F.3d 1107, 1112 (9th Cir. 2003) ...................................................................................... 8

*Nordberg v. Trilegiant Corp.*
   445 F. Supp. 2d 1082, 1098 (N.D. Cal. 2006) ....................................................................... 15

*Poseidon Development, Inc. v. Woodland Lane Estates, LLC*
   152 Cal. App. 4th 1106, 1111 (2007) .................................................................................... 10

*Reichert v. General Ins. Co.*
   68 Cal. 2d 822, 830 (1968) ..................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF SUMMARY JUDGMENT

## I. INTRODUCTION

This case involves the determination of United to go to any lengths to avoid admitting to its mistakes. Plaintiff O'Brien purchased tickets for her and her husband Noah Butler to fly. Then, through what was at best a series of internal snafus, United refused to let them on the flight for which they had paid. For over a year, O'Brien presented United with evidence that she had purchased the tickets. United continued to refuse to examine the matter or admit its errors: not at the airport, when O'Brien and Butler presented their itinerary showing their reservations had been ticketed; not the next day when they sent United copies of the credit card charges; not when they sent United a notice of violation of the Consumer Legal Remedies Act; not when they sent them letters; not when they sued them. No matter how much documentary evidence Plaintiffs have presented, their claims have been ignored. Instead, United has treated Plaintiffs with behavior ranging from indifference to contempt to insult to accusations of criminal conduct. United's behavior gives rise to many causes of action. Plaintiffs here seek partial summary judgment on the breach of contract claim and violations of the Consumer Legal Remedies Act. They seek compensatory damages; injunctive relief of United's contractual obligation of courtesy in the form of a courteous retraction of United's most offensive accusations; and a finding of liability under the CLRA, with damages to be determined at trial.

## II. STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided in this motion for partial summary judgment are:

1. Whether Defendant breached its contract with Plaintiffs by refusing to honor tickets to fly from Oakland, California, to Rochester, New York, on July 18, 2006.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

2. Whether Plaintiff O'Brien should be awarded injunctive relief in the form of a written retraction of a letter accusing her of attempted theft.

3. Whether Defendant's representation to Plaintiffs that the transaction on June 3, 2006 conferred on Plaintiffs a right to travel and an obligation on the part of United to provide transportation, when in fact it did not confer such rights or obligations, violated the CLRA, § 1770 (a)(14).

4. Whether Defendant's representations to Plaintiffs on June 3, 2006 and thereafter, that they had valid tickets and reservations when in fact they did not, violated the CLRA § 1770(a)(16).

## III. STATEMENT OF FACTS

On June 3, 2006, Plaintiff Colleen O'Brien ("O'Brien") purchased airline tickets on United by telephone, paying with a credit card. The tickets, which cost $838.38 (plus $20.00 in service fees), were for her and her husband, Plaintiff Noah Butler ("Butler"), to fly from Oakland, California to Rochester, New York, on July 18, 2006. Declaration of Colleen O'Brien ("O'Brien Dec.") at ¶ 16. O'Brien had previously purchased tickets on the same flights but then had written to United to cancel the tickets and reservations after United provided incorrect seating and refused to change it. *Id.* at ¶¶ 4-11. She had successfully contested the charge through her credit card company. *Id.* at ¶¶ 12, 15. O'Brien explained all of this to the agent and provided her credit card number to be billed. The agent stated that the charge for the tickets would appear as a "rebill." *Id.* at ¶ 16. Shortly after the telephone purchase on June 3, 2006, United sent O'Brien two emails, showing an "E-Ticket Receipt" and confirming the flights and seats she had purchased. *Id.* at ¶¶ 17-18 and Exhs. 8, 9. As the agent had told her, the charges for the two tickets and the service fee appeared on her next credit card statement as "rebills." *Id.* at ¶ 19 and Exh. 10. O'Brien paid her credit card bill, including the charges from United. *Id.* at ¶ 20 and Exh. 11.

On July 6, 2006, without informing O'Brien, United printed and voided O'Brien's tickets so they could not be used. *See* O'Brien Dec. Exh. 30 at p. 59, ln. 13—p. 61, ln. 1; p. 88, lns. 8-11; p. 91, lns. 12-20.

On July 14, 2006, O'Brien printed out her United itinerary online, which showed her flights as "ticketed" and "confirmed." O'Brien Dec. at ¶ 22 and Exh. 12. She also called United repeatedly to confirm her reservation and seats and was repeatedly assured that there were no problems. O'Brien Dec. at ¶ 21. On July 18, 2006, the day of the flight, she was unable to print out her boarding passes, and when she and Butler arrived at the airport, the agents kept them there for hours but never issued boarding passes or gave a coherent explanation. The flight left without them. *Id.* at ¶¶ 23-29.

The following day, July 19, 2006, both O'Brien and Butler attempted to resolve this situation by calling United agents and customer service representatives for hours. O'Brien informed United that she had indeed been billed for the tickets and faxed copies of the charges. *Id.* at ¶¶ 33-40. When United refused to honor the tickets or put them on another flight, Plaintiffs purchased more expensive tickets on Jet Blue, for $1438.40. *Id*. at ¶ 40 and Exh. 15. The difference between the tickets she had purchased on United for $858.38 and the price of the Jet Blue tickets was $640.02.

On July 26, 2006, O'Brien served a "Notice of Violation" on United, pursuant to the California Consumer Legal Remedies Act (CLRA). O'Brien Dec. at ¶ 51 and Exh. 20. United told O'Brien that a lawyer would contact her, but no one did so within the next eight months. *See* O'Brien Dec. at ¶¶ 54-57.

Plaintiffs' tickets on United were governed by the "Contract of Carriage" and "Our United Commitment," United's customer service plan as it existed in 2006. *See* O'Brien Dec. at ¶¶ 65-66 and Exhs. 28, 29. The very first sentence of "Our United Commitment" stated, "Our United Commitment is a sincere promise to our customers that each day, in the air and on the ground, we will strive to provide them with the respect, courtesy, fairness and honesty that they both expect and deserve from United Airlines." *See* O'Brien Dec. Exh. 29.

Plaintiffs filed suit in Superior Court for Alameda County on July 18, 2007, alleging breach of contract, violations of the CLRA, and other claims under California law. *See* O'Brien Dec. at ¶ 57 and Exh. 26. A little more than one month after the lawsuit was filed, one of United's attorneys sent a letter to O'Brien, O'Brien's law partner, and another attorney in the community (not related to this case) accusing O'Brien of improper behavior, including attempted theft. *Id.* at ¶¶ 58-62 and Exh. 27. United removed the case to this Court on August 23, 2007. At a case management conference on November 30, 2007, this Court canceled mediation and directed the parties to proceed with discovery. Plaintiffs now file this motion for partial summary judgment.

## STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1079-80 (9th Cir. 2004); Fed. R. Civ. P. 56(c). While the evidence must be "viewed in a light most favorable to the non-moving party," *id.*, a party opposing summary judgment may not rely on "unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Rather, the non-moving party must "go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

**IV. ARGUMENT**

United's behavior in this case is ludicrous. An error that should have been resolved at the airport, or the next day, or in the ensuing months, has required a lawsuit simply to get Defendant just to read the documents showing Plaintiffs had valid tickets. United's actions give rise to a

number of claims, but Plaintiffs here seek partial summary judgment on only two—breach of contract and violation of the CLRA.

First, Plaintiffs have a simple action for compensatory damages for violation of contract. United entered into a contract with Ms. O'Brien. She agreed to allow her credit card to be billed, and United agreed to let her fly. United first acknowledged that she could fly but, then, at the airport, refused to honor its contract. United's refusal led her to purchase other, more expensive tickets, which she did. United is therefore liable for the difference between the cost of the United tickets Ms. O'Brien bought but was not permitted to use and the cost of the other tickets Ms. O'Brien bought to replace them.

In addition to compensatory damages, Plaintiffs also seek injunctive relief for the breach of contract, in the form of written retraction of the accusations of criminal conduct made by United's attorney. Plaintiffs' contract with United incorporated by reference additional provisions, which included a "sincere promise" to treat customers with "courtesy," "honesty," and "respect." United specifically states in its contract that these incorporated commitments are "enforceable." Accordingly, O'Brien seeks enforcement of this commitment to courtesy, honesty, and respect by requiring United to courteously and honestly admit that it has been in the wrong and to retract its accusations, made to O'Brien's law partner and to another local lawyer who has no connection whatsoever to this matter, that O'Brien was trying to steal from United.

Third, United violated the CLRA by engaging in a series of misrepresentations. In violation of Civil Code § 1770(a)(14), it represented to her that her purchase of tickets would convey the right that she and her husband would be able to fly on the promised date and flights. In multiple violations of Civil Code § 1770(a)(16), United repeatedly represented to O'Brien that it had provided her with a valid ticket and reservation, when in fact it had not. In this motion for partial summary judgment, Plaintiffs seek a determination of liability, with damages to be litigated at trial.

A.  United Breached Its Contract with Plaintiffs

Everyone knows how one purchases an airline ticket.  A person calls the airline, speaks to an agent, selects a flight, and then gives the airline a credit card number to purchase the ticket.[1]  The parties then have a contract whereby the individual promises to pay the airline, and the airline promises to allow the individual to fly.  Plaintiff O'Brien followed this standard script.  She spoke to an agent, paid by credit card over the telephone, and was told, verbally and in writing, that she had a ticket.  Having agreed to be charged, she had fulfilled her part of the bargain; in addition, she also paid her credit card bill with the charge for the ticket.  United then repeatedly confirmed Plaintiffs' right to fly—in two emails, in an itinerary printed days before the flight, and in three to five separate telephone conversations.  Inexplicably, however, United destroyed Plaintiffs' tickets and refused to let them on their flight.  As a consequence, Plaintiffs were forced to purchase more expensive tickets.  Under California law, United must pay the difference.

The elements of a breach of contract action are well-established.  To recover damages, Plaintiffs must show: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages suffered by the plaintiff as a result.  *See, e.g., Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968); *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1111 (2007).  Here, Plaintiff O'Brien and United entered into a contract for airline tickets.  O'Brien paid for tickets in exchange for United allowing O'Brien and Butler to fly.  United then did not allow Plaintiffs to fly and, as a result, they had to purchase more expensive airline tickets.

1.     United and Plaintiff O'Brien entered into a contract

United and O'Brien entered into a contract for an airline flight.  "A contract is an agreement to do or not do a certain thing."  Cal. Civil Code § 1549.  O'Brien agreed to pay United $858.38, and United agreed that O'Brien and Butler could fly from Oakland, California on July 18, 2006, connecting with flight from Chicago to Rochester NY on July 19, 2006.  O'Brien purchased this ticket on the telephone on June 3, 2006.  Declaration of Colleen O'Brien

---

[1] This Court can take judicial notice of this commonplace scenario.

("O'Brien Dec.") at ¶ 16. She gave her credit card information. *Id*. The agent on the telephone told her that her credit card had been billed and the charge would appear as a "rebill." *Id*.[2] United then sent her two emails, showing an "E-Ticket Receipt" and confirming the flights and seats. *Id.* at ¶¶ 17-18 and Exhs. 8 and 9. United did bill O'Brien's credit card, and, as the agent had told her, the charge appeared as a "rebill." *Id.* at ¶ 19 and Exh. 10.

An airline ticket is a contract. *See, e.g.*, *Harby v. Saadeh*, 816 F.2d 436, 438 (9th Cir. 1987). That contract is governed by the terms of the "Contract of Carriage." In this case, O'Brien obtained e-tickets, which are "the record of agreement maintained and processed within the carrier's system." *See* O'Brien Dec. at ¶ 65 and Exh. 28, (Contract of Carriage at Rule 0100(G)). According to the Contract of Carriage, "A written receipt is provided to the purchaser of the electronic ticket which contains a reference for retrieving the record within the carrier's reservation system and summary of the ticket information." *See id.* In addition, on June 3, 2006, after she purchased the tickets, United indeed sent O'Brien an email containing a section entitled "E-Ticket Receipt," which had the ticket numbers and reservation numbers. *See* O'Brien Dec. at ¶ 17 and Exh. 9.

As further evidence of the existence of a contract, United repeatedly acknowledged its intention to fulfill its part of the bargain—that is, to let Plaintiffs fly. After it sent the emails confirming her ticket, United added the ticket to O'Brien's online itineraries. This itinerary appeared as "ticketed" and "confirmed" on July 14, 2006, just four days before the flight. O'Brien Dec. at ¶ 22 and Exh. 12. United employees also confirmed to O'Brien between three and five times that she and Butler were on the flight. On the day of the flight, a United employee confirmed at the airport that United had issued tickets for Plaintiffs. *Id.* at ¶ 26 and Exh. 13.

---

[2] The charge appeared as a "rebill," because O'Brien had previously purchased tickets for this flight but then had sent United a letter canceling those tickets, after United failed to provide the correct seats. O'Brien was pregnant at the time and had specifically purchased seats with additional room, but United assigned her different seats. She had disputed the charge through her credit card company and received a credit from the credit card. *See* O'Brien Dec. at ¶¶ 4-15. On June 3, 2006, she purchased tickets again, this time with the correct seats. *See id.* at ¶¶ 16-18.

Finally, the day after United refused to allow Plaintiffs to fly, a United employee provided Plaintiffs with printed records showing that her tickets had been paid for. *Id.* at ¶¶ 44-46 and Exh. 17.

### 2. Plaintiff fulfilled her side of the contract.

The contract required O'Brien to pay for the airline tickets. O'Brien paid by credit card over the telephone on June 3, 2006. *Id.* at ¶¶ 16-18 and Exhs. 9, 10. United charged her for tickets, and the charges totaling $858.38 appeared on her credit card statement dated 06/02/06 – 07/02/06 in the "debit" column. *Id.* at ¶ 19 and Exh. 11. She then paid the credit card bill containing the United charge. *Id.* at ¶ 20 and Exh. 11. Plaintiffs appeared at the airport well in advance of their scheduled flight. *Id.* at ¶¶ 23-24, 45, 47 and Exh. 17. They thus performed every action required of them by contract.

### 3. Defendant United did not fulfill its side of the contract.

After repeatedly acknowledging its obligations under the contract, as described above, United did not allow Plaintiffs to fly. They were never issued boarding passes. The flight boarded and left without Plaintiffs. O'Brien Dec. at ¶¶ 25-29.

### 4. Plaintiffs suffered monetary damages.

Because they were not allowed to fly on the United flight for which they had purchased tickets, Plaintiffs were forced to purchase other tickets to their destination. O'Brien Dec. at ¶¶ 33-40. The tickets Plaintiffs purchased on Jet Blue for a flight to Rochester, NY, on July 19, 2006, cost $1498.40. *Id*. at ¶ 40 and Exh. 15. Plaintiff paid $858.38 for the United tickets that United refused to honor. *Id*. at ¶¶ 16, 19. Her contract damages are the difference between the amount she paid for the United tickets and the amount she paid for the Jet Blue tickets—$640.02. *See* Cal. Civil Code § 3300.

### 5. This Court should also order injunctive relief.

The Contract of Carriage for Plaintiffs' tickets incorporated the provisions of "Our United Commitment," which was the customer service plan adopted by United. As United stated in the Contract of Carriage, those "provisions shall constitute an *enforceable* commitment to United's customers and passengers." *See* O'Brien Dec. Exh. 28, Contract of Carriage at Rule

0001(H) (emphasis added).  The very first sentence of "Our United Commitment" stated, "Our United Commitment is a sincere promise to our customers that each day, in the air and on the ground, we will strive to provide them with the respect, courtesy, fairness and honesty that they both expect and deserve from United Airlines." *See* O'Brien Dec. ¶ 66 and Exh. 29.  United's manner in dealing with Plaintiffs has been anything but respectful, courteous, fair or honest.  In particular, one of United's attorneys, on behalf of United, sent a letter to two members of the local bar (including one who had no conceivable connection with this case) accusing O'Brien of trying to steal from United and other unethical conduct.  O'Brien Dec. at ¶¶ 59-62 and Exh. 27.  As United is the one who breached its contract and then failed to ever properly investigate or review the documents, these improper accusations also breached United's promise to behave in a courteous, respectful, and honest manner.  Plaintiff O'Brien accordingly seeks injunctive relief requiring United to send a letter to both Mr. Kelleher and Mr. Terbeek, affirming that United erroneously failed to honor O'Brien's valid tickets, that O'Brien did not attempt to steal from United or engage in any unethical conduct, and that O'Brien in fact did nothing wrong.  Accusing a member of the bar of attempted theft and sending that accusation to other local members of the bar is an obvious harm, and it is one for which monetary damages is not the sole appropriate remedy.  Injunctive relief is necessary to put Plaintiff in the position she was in before the breach.

     B.  United Violated the California Consumer Legal Remedies Act

The California Consumer Legal Remedies Act (CLRA), Civil Code §§ 1750 et seq., prohibits a variety of misrepresentations in commercial transactions.  These remedies are not exclusive, but rather are in addition to any other procedures or remedies authorized by law.  *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1077 (1999).  In accordance with the CLRA, O'Brien issued a demand in advance of bringing this lawsuit.  O'Brien Dec. at ¶ 51 and Exh. 20; *see* Civil Code § 1782(a).

In this case, United engaged in a series of misrepresentations to induce O'Brien to purchase plane tickets.  These misrepresentations plainly fall under the CLRA.  The CLRA provides in relevant part:

1770

 (a) The following … unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

*****

 (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve….

*****

 (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Civil Code § 1770(a)(14) and (a)(16).

  United violated, at a minimum, § 1770(a)(14) and 1770(a)(16).[3] United represented that a transaction (the ticket purchase) conveyed rights (the right to fly) that it did not confer. *See* Civil Code § 1770(a)(14). United then engaged in a series of misrepresentations that the subject of the transaction (a valid ticket to fly) had been supplied in accordance with United's promises. *See* Civil Code § 1770(a)(16). O'Brien and Butler obviously suffered harm—among other things, they spent two uncomfortable, frustrating, and humiliating hours at the airport; they were not allowed to fly on the date they had planned; and they spent hours and hours attempting to resolve the situation the following day without success. Had United told the truth—that Plaintiffs would not be allowed to fly—then Plaintiffs would not have paid for the tickets on June 3, 2006. Had United later told the truth—that Plaintiffs' tickets had been destroyed on July 6, 2006—Plaintiffs could have tried to correct the situation in advance or could have purchased tickets on another airline in advance and planned accordingly.

Violation of 1770(a)(14)

---

[3] It is possible that United violated the CLRA in other ways as well, but Plaintiffs are not moving for summary judgment on these additional violations. Nor are Plaintiffs moving for summary judgment at this time on their other claims.

On June 3, 2006, a United agent represented to O'Brien that she would be "rebilled" for the tickets and that, in accepting that billing, O'Brien and Butler would receive tickets and be able to fly. O'Brien Dec. at ¶ 16. In fact, O'Brien's payment for the tickets did not confer any right to fly, s*ee id*. at ¶¶ 23-38, and thus violated the CLRA. *See* Civil Code § 1770(a)(14); *see also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1098 (N.D. Cal. 2006).

Violations of 1770(a)(16)

On June 3, 2006, shortly after the telephone conversation in which O'Brien agreed to pay for the tickets in exchange for receiving tickets, United sent two emails to O'Brien confirming that her tickets had been purchased and that she had confirmed seats. O'Brien Dec. at ¶¶ 17-18 and Exhs. 9, 10. These were "representation[s] that the subject of the transaction" (the right to fly on the dates and flights purchased) had "been supplied in accordance with a previous representation when it has not." *See* Civil Code § 1770(a)(16). In other words, United said it had provided e-tickets and confirmed seats for the Plaintiffs when it had not done so.

Next, on July 14, 2006, United provided O'Brien, through its website, with an Itinerary for the flights that listed them as "ticketed" and "confirmed." O'Brien Dec. at ¶ 22 and Exh. 12. In fact, at that point and unbeknownst to O'Brien and Butler, United had actually destroyed the tickets on July 6, 2006, so there was no chance that O'Brien and Butler would be allowed to fly. *See* O'Brien Dec. Exh. 30, at p. 88, lns. 8-11; O'Brien Dec. Exh. 31. In addition, United's 30(b)(6) witness admitted that it would not have been possible to tell from the July 14, 2006, itinerary or from United's website that there was any problem with the ticket or reservation. O'Brien Dec. Exh. 30 at p. 59, ln. 13—p.61, ln. 1. She also admitted that United did not notify the Plaintiffs that the tickets were voided. *Id.* at p. 91, lns. 12-20. Thus, United's representation on July 14, 2006 that O'Brien was "ticketed" and "confirmed" were utterly false. *See* Civil Code § 1770(a)(16).

Finally, O'Brien called United repeatedly to confirm that she was on the flight, and each time agents told her that she and her husband were all set to fly. O'Brien Dec. at ¶ 21. At least one of these calls, and one of these confirmations from a United agent that she and her husband were on the flight, occurred after United had already destroyed the tickets. *Id.* Again, United

represented that the subject of the transaction had been supplied when it had not been. *See* Civil Code § 1770(a)(16).

## V. CONCLUSION

This lawsuit should never have been necessary. But United's steadfast refusal to admit that it was in the wrong and its failure to honor its commitments have forced Plaintiffs into this Court. Plaintiffs move for partial summary judgment, compensatory damages, and injunctive relief.

Date: January 25, 2008                                          Respectfully Submitted,


_____/s/_____
Colleen O'Brien
O'Brien & Kelleher, LLP
Attorney for Plaintiffs