**WORTHE HANSON & WORTHE**
A Law Corporation
1851 East First Street, Ninth Floor
Santa Ana, California 92705
Telephone (714) 285-9600
Facsimile (714) 285-9700
jworthe@whwlawcorp.com
tworthe@whwlawcorp.com

JEFFREY A. WORTHE, SBN 080856
JOHN R. HANSON, SBN 149794
TODD C. WORTHE, SBN 177452

Attorneys for Defendant, UNITED AIRLINES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION**

NOAH BUTLER and COLLEEN O'BRIEN,

Plaintiffs,

v.

UNITED AIR LINES, INC., and DOES 1 through 100, Inclusive,

Defendants.

**CASE NO.: C07-4369(CRB)**

**DEFENDANT UNITED AIRLINES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** [Request for Judicial Notice filed concurrently herewith]

DATE: February 29, 2008
TIME: 10:00 a.m.
DEPT.: 8

**JURISDICTION** of this Court is invoked on the basis of diversity of citizenship and pursuant to 28 U.S.C. 1332, 28 U.S.C. 1441 and 28 U.S.C. 1446.

**TO THE ABOVE-ENTITLED COURT, THE PARTIES HEREIN AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Comes Now Defendant, UNITED AIRLINES, INC. and submits the following memorandum of points and authorities in opposition to plaintiffs' COLLEEN O'BRIEN and NOAH BUTLER (collectively, "O'BRIEN") Motion for Partial Summary Judgment.

# TABLE OF CONTENTS

PAGE(S)

I. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II. PLAINTIFFS CANNOT ESTABLISH A BREACH OF CONTRACT. . . . . . -4-

III. PLAINTIFFS' STATE LAW CONSUMER PROTECTION CLAIMS ARE EXPRESSLY PREEMPTED BY THE AIRLINE DEREGULATION ACT OF 1978. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

# TABLE OF AUTHORITIES

**PAGE(S)**

**STATUTES**


49 U.S.C. § 41713(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

49 U.S.C.Appx. 1305(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Airline Deregulation Act of 1978 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -7-, -8-

*Civil Code* section 1790 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

*Civil Code*, section 1550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-


**CASES**


*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-

*Boylan v. Hot Springs R. Co.*, 132 U.S. 146, 10 S.Ct. 50, 33 L.Ed. 290 (1889) . . . -5-

*Charas v. Transworld Airlines*, 160 F.3d 1259, 1261 (9th Cir. 1998) . . . . . . . . . . -11-

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed. 157 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -9-

*Power Standards Lab, Inc. v. Federal Exp. Corp.* (2005) \ 127 Cal.App.4th 1039, 1044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Wittenberg v. Eastern Airlines, Inc.*, 126 F.Supp 459 (D.C.S.C. 1954.) . . . . . . . . . -7-


WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS.

As is set forth in more detail in UNITED AIRLINES, INC.'s Memorandum of Points and Authorities in Support of UNITED's Motion for Summary Judgment, this action arises from the purchase, and then cancellation, of airplane tickets by plaintiff Colleen O'Brien, a licensed California attorney, and her husband, Noah O'Brien.

According to Ms. O'Brien's *verified* complaint, on or about April 23, 2006, she and her husband entered into an agreement with UNITED AIRLINES, INC. (hereinafter, "UAL."). In her complaint, Ms. O'Brien attaches a copy of an email confirmation, purportedly sent by United Airlines on June 3, 2006, to Ms. O'Brien as Exhibit "A" to plaintiffs' complaint. Ms. O'Brien's complaint is unclear as to whether she claims the June 3, 2006 email *memorializes* the alleged April 23, 2006 agreement or whether the June 3, 2006 email *is* the April 23, 2006 agreement.

Plaintiffs assert a first cause of action for breach of contract, based on their allegation that plaintiff had valid reservations defendant refused to honor.

Plaintiffs assert a second cause of action to the effect that UAL fraudulently refused to honor their contract. According to plaintiffs, UAL repeatedly stated Plaintiffs did not pay for their tickets, did not have reservations, had failed to procure the proper tickets "and the like." (Plaintiffs complaint, p. 4, para. FR-2.) Plaintiff does not allege any facts which might show justifiable reliance on the allegedly false statements.

Plaintiff's allege a third cause of action for violation of the Consumers Legal Remedies Act, asserting that the tickets purchased were goods or services.

Plaintiff's fourth cause of action asserts violations of the Song-Beverly Consumer Warranty Act, *Civil Code* section 1790, and other state law-based consumer protection statutes. Plaintiffs further assert UAL violated the Magnuson-Moss Act.

///

Finally, plaintiffs assert causes of action for negligent and intentional infliction of emotional distress on the grounds UAL's alleged breach of contract caused "grave trauma" to plaintiff, who was pregnant at the time of the alleged breach and fraud.

Discovery in this matter has established that plaintiffs did in fact purchase tickets for travel on UNITED. However, due to Ms. O'Brien's dissatisfaction with her seating - she alleges she was verbally promised seats in the Economy Plus section of the aircraft - she sent correspondence to UNITED cancelling her reservation and demanding a refund of the amounts paid.

As a result of O'BRIEN's dispute of the charge, UNITED was debited the sum of Eight Hundred Thirty Eight Dollars and Thirty Eight Cents ($838.38). (Declaration of Mina Taheri in Support of Motion for Summary Judgment by Defendant, UNITED AIRLINES, INC., page 2, lines 11 - 14, filed concurrently with UNITED's MSJ.)

On June 3, 2006, after UNITED's account was debited by plaintiffs' credit card company, UNITED contacted O'BRIEN regarding a schedule change. Plaintiffs tickets were cancelled, but they still held a valid reservation. It is UNITED's custom and practice to keep open all reservations, even in the event of a disputed credit card charge, so that if the passenger changes his or her mind, they can still fly if they pay on the date of travel. (Declaration of Mina Taheri in Support of Motion for Summary Judgment by Defendant, UNITED AIRLINES, INC., page 2, lines 15 - 19, filed concurrently herewith.)

*On June 2, 2006, plaintiff O'BRIEN received correspondence from Charles Travis, a Financial Service Advisor, informing her that the sum of $858.38 had been credited to her account.* (Plaintiff's Response to UNITED Request for Production of Documents, Document Bates Number P000059, June 2, 2006 correspondence to Plaintiff. Exhibit "D" to UNITED's MSJ.)

On or about June 3, 2006, plaintiffs' credit card company may have re-billed O'BRIEN's credit card in the amount of $838.38. However, UNITED had no part in

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

that re-billing and was not credited for that amount. After being debited $838.38 after plaintiff cancelled her ticket, UNITED received no funds at any time from or on behalf of plaintiffs from any source. (Declaration of Mina Taheri in Support of Motion for Summary Judgment by Defendant, UNITED AIRLINES, INC., page 2, lines 20 - 23, filed concurrently herewith.)

Chase Manhattan Services Department confirmed to UNITED employee Mina Taheri that UNITED was debited on two occasions for the sum of $838.38. (Declaration of Mina Taheri in Support of Motion for Summary Judgment by Defendant, UNITED AIRLINES, INC., page 3, lines 2 - 5, filed concurrently herewith.)

Despite her instructions to her credit card company to cancel the charge paid to UNITED for the tickets, and despite her statement to UNITED that she was cancelling payment and threatening UNITED not to dispute her action, Ms. O'BRIEN and Mr. BUTLER apparently attempted to fly on the reservation at issue on or about July 18, 2006. As was noted above, Plaintiffs' reservation remained valid, but unpaid for. When they arrived and attempted to check in, they were told they needed to see an agent.

On July 19, 2006, Ms. O'BRIEN again wrote to UNITED, stating, "This is to inform you that I intend to file suit against your company in California for breach of contract, fraud, infliction of emotional distress and any other statutory violations stemming from reservation LSDN10 and your repeated failure to honor it on July 18 and July 19." She again states, "I have notified my credit card company to remove all the United charges from my account. You are on additional notice that if United makes any attempt to assert a right to those disputed charges based on an assertion of "non-refundability", I will include a claim for additional damages." (Exhibit "E," to UNITED's MSJ, Plaintiff's correspondence dated July 19, 2006.)

The undisputed evidence in this case establishes UNITED was debited the cost of plaintiffs' tickets on two separate occasions. Although plaintiffs assert they were

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

also debited on a second occasion for the cost of the tickets, records from plaintiffs' credit card company establish that no payment was made to UNITED.

In this Opposition, UNITED establishes that the alleged contract between it and plaintiffs was cancelled at the request of plaintiffs and any consideration refunded at plaintiffs' request. Although it does appear that plaintiffs later attempted to travel on the unpaid reservation, the undisputed evidence in this case establishes that there was no consideration paid to UNITED for that travel, and thus no contract for transportation.

As the existence of a valid contract for travel between UNITED and plaintiffs is a pre-requisite to plaintiffs' claims, evidence that no such contract existed establishes the absence of any genuine issue of material fact as to plaintiffs' claims. Accordingly, plaintiffs cannot prevail on their claim for breach of contract as a matter of law. Further, plaintiffs' admit their relationship with UNITED was governed by the terms of UNITED's contract of carriage. They state, "An airline ticket is a contract. [Citation.] That contract is governed by the terms of the Contract of Carriage. (Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, p. 11, lines 6, 7.) UNITED's contract of carriage establishes that UNITED employees do not have authority to alter, modify, or waive any provision of the contract of carriage unless authorized by a corporate officer of UNITED. Further UNITED's agents are only authorized to sell tickets for air transportation pursuant to approved fares, rules and regulations of UNITED. Any contract or modification to the contract of carriage O'BRIEN may contend exists is not enforceable against UNITED.

Finally, plaintiffs' claims under the Consumer Legal Remedies Act are expressly preempted under the Airline Deregulation Act of 1978.

## II. PLAINTIFFS CANNOT ESTABLISH A BREACH OF CONTRACT.

Plaintiffs' first cause of action is for breach of contract. Despite the lack of clarity as to the terms of the contract plaintiffs allege UNITED breached, it seems

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

apparent plaintiffs are claiming that UNITED refused to provide them transport. Further, reference to plaintiffs verified complaint establishes that plaintiffs complain that UNITED's refusal to provide them transport on July 19, 2006, is the breach which is the subject of their action. (Exhibit "F," Plaintiffs' verified complaint.)

California *Civil Code*, section 1550 provides, "It is essential to the existence of a contract that there should be (a) Parties capable of contracting; (b) Their consent; (c) A lawful object; and (d) A sufficient cause or consideration." When a party is required to pay for tickets as a pre-requisite to obtaining passage, a refusal to pay for the ticket results in there being no contract in force between the parties. Where there is no contract in force, there is no claim for breach of contract. *(See, e.g., Boylan v. Hot Springs R. Co.,* 132 U.S. 146, 10 S.Ct. 50, 33 L.Ed. 290 (1889).)

As is set forth above in the statement of facts, plaintiffs purchased tickets for travel on UNITED and then disputed the charge, demanding that both UNITED and her credit card company credit her account for the cost of the tickets. As is established in the declaration of UNITED employee Mina Taheri filed in support of UNITED's Motion for Summary Judgment, the credit was issued to plaintiff. UNITED received no other payment made by or on behalf of plaintiffs for travel subsequent to issuance of the refund and plaintiffs have not produced any evidence that they made a second payment to UNITED. Accordingly, plaintiffs cannot establish the existence of consideration for any contract of transportation between themselves and UNITED. In the absence of consideration there is no contract. In the absence of a contract, plaintiffs cannot prove a breach of contract. Accordingly, plaintiffs cannot prevail on their first cause of action for breach of contract as a matter of law.

It is conceivable that plaintiffs actually believed they had valid tickets for travel on UNITED, despite the fact that she demanded her reservation be cancelled and disputed the credit card charge. However, certain of Ms. O'BRIEN's statements are simply inaccurate.

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

Ms. O'BRIEN claims that on June 3, 2006, she phoned UNITED and purchased a ticket by telephone. According to O'BRIEN, an unknown agent then told her that her credit card had been billed and the charge would appear as a rebill. She goes on to offer the court evidence of her assertion. "United then sent her two emails, showing an "E-Ticket Receipt" and confirming the flights and seats." (Plaintiff Motion for Summary Judgment, p. 11, lines 1 - 5.) She refers to her Exhibits 8 and 9. (*Id.*) However, her Exhibit 8, which she states was sent after she rebooked her tickets on June 3, 2006, is clearly dated April 23, 2006, 11:24 a.m. Her Exhibit 9, does indicate it was sent on June 3, 2006, however it makes no mention of any purchase on that date, but indicates it also pertains to Ms. O'BRIEN's reservation issued on April 23, 2006. UNITED has no record of any telephone purchase by Ms. O'BRIEN on this date.

Ms. O'BRIEN goes on to assert that her Exhibit 12 establishes that her itinerary appeared as "ticketed" and "confirmed." A review of Exhibit 12 indicates the notation, "This reservation has been ticketed." The word "confirmed" only appears in connection with the status of the flight at issue. As set forth above, Ms. O'BRIEN's tickets were printed, i.e., ticketed, in order to prevent their use.

UNITED has established it received no consideration for any contract asserted by Ms. O'BRIEN. Accordingly, there was no contract. In the absence of a contract there can be no breach. Plaintiffs cannot establish a breach of contract and are not entitled to summary judgment on this issue.

Finally, to the extent plaintiffs claim that any statements or agreements made by UNITED employees vary the terms of the written contract of carriage in any way, such claim is invalid. As noted above, plaintiffs admit any contract they made have made with UNITED was subject to the terms and conditions of UNITED's Contract of Carriage. They state, "An airline ticket is a contract. [Citation.] That contract is governed by the terms of the Contract of Carriage. (Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, p. 11, lines

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

6, 7.) UNITED's contract of carriage is attached as Exhibit 28 to Ms. O'BRIEN's declaration in support of plaintiffs motion. The contract of carriage establishes at section 1, Application of Tariff, item F) that UNITED employees do not have authority to alter, modify, or waive any provision of the contract of carriage unless authorized by a corporate officer of UNITED. Further UNITED's agents are only authorized to sell tickets for air transportation pursuant to approved fares, rules and regulations of UNITED. Any contract or modification to the contract of carriage O'BRIEN may contend exists is not enforceable against UNITED. A similar issue arose in *Wittenberg v. Eastern Airlines, Inc.*, 126 F.Supp 459 (D.C.S.C. 1954.) There, plaintiff asserted he had been assured by a representative of the airline that he would arrive in time to make a connecting flight, and that the connecting flight would be held, if necessary, for him. Plaintiff missed his flight and sued for damages, including consequential damages. The airline moved for summary judgment on the grounds that the alleged promise made by its employee was of no effect. The airline's tariff provided, "no agent, servant or representative of the carrier has authority to alter, modify or waive any provision of the [conditions of] contract." The court held that this tariff provision precluded plaintiff from relying on any alleged representation made by an airline employee. Similarly here, even if plaintiff had admissible evidence regarding an agreement with a UNITED employee, the terms of transportation preclude that agreement from having any effect on UNITED.

## III. PLAINTIFFS' STATE LAW CONSUMER PROTECTION CLAIMS ARE EXPRESSLY PREEMPTED BY THE AIRLINE DEREGULATION ACT OF 1978.

In addition to their contract and tort-based claims, plaintiffs also seek summary judgment on a cause of action pursuant to the Consumers Legal Remedies Act, asserting that the tickets purchased were goods or services. As applied to air carriers, enforcement of these state law-based consumer protection statutes is expressly preempted by the Airline Deregulation Act of 1978.

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

In 1978, Congress passed the Airline Deregulation Act ("ADA"). The Act contains a clause expressly precluding States from enforcing any "law, regulation or other provision" having the force and effect of "law related to a **price, route, or service** of an air carrier." (49 U.S.C. § 41713(b). As regards plaintiffs' causes of action, the U.S. Supreme Court's decision in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed. 157 (1992), is directly on point for the proposition that section 41713(b) pre-empts any State attempt to regulate an air carrier's trade practices.

In *Morales*, the National Association of Attorneys General (NAAG) adopted guidelines that contained detailed standards purporting to govern the content and format of, among other things, airline advertising. The States' Attorneys General determined that these guidelines would be enforced through the individual states' consumer protection statutes. Texas's Attorney General sent a notice of intent to sue to several air carriers based upon these guidelines. The air carriers responded by bringing suit for injunctive relief precluding the states from enforcing the standards on the grounds the predecessor statute to section 41713(b)[1] preempted any such effort.

In finding that the ADA did preempt the state's efforts to regulate air carrier advertising, the Supreme Court noted that prior to the enactment of the ADA, states were free to regulate intrastate airfares and to enforce state laws against deceptive trade practices. (*Morales*, supra, 504 U.S. 374, 378.) However, in 1978, Congress, determining that "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality of air transportation services," enacted the Airline Deregulation Act (ADA). (*Id.*) In order to assure that states would not undo federal regulation by enacting regulations of their own, the ADA included a preemption provision precluding the states from enforcing

[1]49 U.S.C.Appx. 1305(a)(1) preempted any state attempt to enforce any law related to and air carrier's " rates, routes, or services."

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

any law related to an air carrier's "rates, routes or services." Further, in order to give the preemption provision the broad effect Congress intended, the Court held that the preemption statute prohibits not only the direct regulation of prices by states, but also preempts indirect regulation "relating to" prices that have the "forbidden significant effect" on such prices. (*Morales*, 504 U.S. 374 at 385 - 388.)

Shortly after deciding *Morales*, the Supreme Court again took up the issue of express preemption of state regulation of an air carrier's trade practices. In *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), members of American's frequent flyer program challenged certain changes to that program enacted by American and brought a class action alleging violations of the Illinois Consumer Fraud and Deceptive Practices Act and also claims for breach of contract. Although the Court was mainly concerned with the issue of whether claims of breach of contract would survive the ADA's express preemption, the Court made it clear that the ADA preempted any state attempt to use its consumer protection laws to regulate an air carrier. The Court held that statutes like the Illinois Consumer Fraud Act and the NAAG guidelines at issue in *Morales*, "highlight the potential for intrusive regulation of airline business practices inherent in state consumer protection legislation typified by the Consumer Fraud Act." (*Wolens*, supra, 513 U.S. 219, 227 - 228, emphasis added.) The Court found an air carrier's private bargains with its passengers could be enforced without interfering with Congress's intent to deregulate the aviation industry but held, "the Consumer Fraud Act serves as a means to guide and police the marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by airline customers." (*Id.* At 228.) As such, application of the provisions of the Illinois Consumer Fraud Act to air carriers was preempted by section 41713(b).

Courts in California have recognized the similarity of the consumer protection statutes at issue in *Morales* and *Wolens*, and in this state, preemption of consumer fraud statutes under section 41713(b )(1) has been analyzed in terms of the *Wolens*

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

decision. In *Power Standards Lab, Inc. v. Federal Exp. Corp.* (2005) 127 Cal.App.4th 1039, 1044, the court reviewed *Wolens* and derived the following rule,

> [T]he preemption provision "permits state-law-based court adjudication of routine breach-of-contract claims" although it "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state law or policies external to the agreement. ... As one federal court held, "when the state begins to change the parties's financial arrangements ... it is supplying external norms, a process that the national government has reserved to itself in the air transportation business. [Citation.]

In the instant case, the *Wolens* rule described by the *Power Standards Lab, Inc.* court applies to permit plaintiffs to pursue a breach of contract cause of action, if one exists, as such a claim would seek only state enforcement of the bargain allegedly made by plaintiff and UNITED. However, causes of action based on state law or policies external to the agreement between the parties are expressly preempted. Although plaintiffs are not entirely specific as to the manner in which UNITED violated the consumer protection statutes at issue, it appears plaintiff seeks to utilize California's consumer statutes to regulate the manner in which UNITED sells tickets to passengers. (Exhibit "F" Plaintiffs Complaint, attachment to complaint, pp. 1 - 3.) Plaintiff's consumer protection causes of action, based on state public policy as to the manner in which businesses may conduct trade, seeks to impose "external norms"

through the use of statutory enhancements and enlargements on the manner in which UNITED conducts the core element of its business. It is these "external norms" that Congress intended to prevent states from imposing when it enacted Section 41713(b).

The State may provide plaintiffs contractual relief, if plaintiffs prove breach and damages. It may not require disgorgement of alleged profit, or award attorney's fees not provided in the underlying contract, as these "enhancements" are creations of State public policy and not components of the parties' bargain.

UNITED wishes to emphasize it is not arguing for broad preemption of all claims against air carriers. Although the lower courts have differed in their opinions regarding what "services" means in the context of express preemption, there has never been any disagreement that state attempts to regulate the manner in which airlines compete in the aviation industry are preempted. Thus, in *Charas v. Transworld Airlines*, 160 F.3d 1259, 1261 (9th Cir. 1998), the Ninth Circuit Court of Appeals held, "In enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry."

It is not difficult to determine that if plaintiffs' consumer protection claims were to succeed, state regulation of the manner in which the airline competes for passengers and tickets them would have an immediate and massive effect on prices charged by air carriers. In addition, if California were to attempt regulation of an air carrier's ticketing procedures, there is nothing to stop all other states from imposing their own requirements, resulting in a jumble of inconsistent regulation. Because Plaintiffs' consumer protection causes of action seek to impose State standards on the manner in which air carriers conduct business, they are preempted.

## IV. CONCLUSION.

It is apparent this case has assumed *cause cèlèbre* status for plaintiffs. However, regardless of the vehemence with which they argue they have been injured, several facts cannot be disputed. First, plaintiffs demanded their funds be returned to

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600

them. Their credit card company obliged them, debiting UNITED's account for the cost of the tickets. Next, regardless of what their own credit card company did, UNITED never re-billed plaintiffs nor was it ever credited for the cost of the cancelled tickets. Accordingly, plaintiffs cannot show the existence of consideration for a contract for transportation. Plaintiffs cannot show they are entitled to a grant of partial summary judgment as to either their breach of contract or their Consumer Legal Remedies Act causes of action.

Dated: February 7, 2008

**WORTHE HANSON & WORTHE**

By:______________________________
JOHN R. HANSON, ESQ.
Attorneys for Defendant, UNITED AIRLINES, INC.

WORTHE HANSON & WORTHE
1851 EAST FIRST ST., NINTH FLOOR
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 285-9600