Colleen O'Brien (Bar No. 215514)
O'Brien & Kelleher, LLP
1655 N. Main St, Suite 220
Walnut Creek, CA 94596-4642
Telephone: (925) 280-1250
Fax:  (775) 249-9120
colleen@EastBayAttorneys.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BUTLER, et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>UNITED AIR LINES, INC.,<br><br>         Defendant. | Case No.: C07-04369 CRB<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION<br><br>Date:  February 29, 2008<br>Time:  8:30 a.m.<br>Courtroom No.:  8, 19th Floor |

       This Opposition is based on the points and authorities and declarations filed herewith, as well as the points and authorities filed in support of Plaintiffs' Motion for Partial Summary judgment, the Declarations filed in Support of that Motion, and all the pleadings and papers on file.

//

//

//

//

//

//

//

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................5

II.     COUNTERSTATEMENT OF FACTS ..................................................6

III.    ARGUMENT ......................................................................................8

        1. The Only Admissible Documentary and Testimonial Evidence in this
        Case Indicates Good Consideration and a Valid Contract. ...................8

        2. The Declaration of Mina Taheri Submitted in Support of Defendant's
        Motion for Summary Judgment Does Not Contain Relevant Admissible
        Evidence. .........................................................................................10

        3. Plaintiffs Can Establish Fraud and Misrepresentation as They Have Been
        Repeatedly Lied to and/or Unreasonably Misled By UAL ...................11

        4. Plaintiffs' Claims Are Not Preempted by the Airline Deregulation Act..............13

        5. There Are Facts to Support Negligent Infliction of Emotional Distress a
        Jury Could Find that UAL's Treatment of Plaintiffs is Outrageous. ....................19

IV.     CONCLUSION....................................................................................20

PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

# TABLE OF AUTHORITIES

**Cases**

*American Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995).................................................... 13, 14

*Aquino v. Asiana Airlines,* Inc., 105 Cal.App.4th 1272........................................................ 15, 18

*Charas v. Trans World Airlines, Inc,* 160 F.3d 1259 (9th Cir. 1998).................................... 15, 16

*Duncan v. Northwest Airlines, Inc.,* 208 F.3d 1112 (9th Cir. 2000)............................................ 15

*Elsworth v. Beech Aircraft Corp.,* 37 Cal.3d 540, 548 (1984) ................................................... 13

*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 153 (1982) ......................... 13

*Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 923 (1980)........................................... 19

*Montalvo v. Spirit Airlines,* 508 F.3d 464 (9th Cir. 2007)...................................................... 16, 17

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, (1992) ................................................ 13, 14

*Newman v. American Airlines,* 176 F.3d 1128, 1130-1131 (9th Cir. 1999). ................................ 15

*Polakoff v. American Airlines, Inc.,* 2003 U.S. Dist. LEXIS 18558 (N.D.Cal. 2003)................. 15

*Power Standards Lab, Inc. v. Federal Express Corp,* 127 Cal.App.4th 1039............................. 15

*Romano v. American Trans Air,* 48 Cal.App.4th 1637 (1996) .............................................. 15, 17

*Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423 (7th Cir. 1996) ................................. 15

*Vinnick v. Delta Airlines,* 93 Cal.App.4th 859 (2001) ................................................................ 15

**Statutes**

Airline Deregulation Act of 1978 (ADA) ............................................................................ 13,16

California Civil Code section 1605................................................................................................ 9

California Civil Code section 1614................................................................................................ 9

California Civil Code section 1615................................................................................................ 9

California Civil Code section 3516.............................................................................................. 10

California Civil Code section 3543.............................................................................................. 10

California Civil Code section 3546.............................................................................................. 10

United States Constitution (art. VI, cl. 2) ................................................................................... 13

**Other Authorities**

3

PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

1-1900 CACI 1903.................................................................................................................. 12

**Treatises**

*Legal Turbulence: The Court's Misconstrual of The Airline Deregulation Act's Preemption Clause and The Effect On Passengers' Rights, Daniel H. Rosenthal, 51 Duke L.J. 1857, 1873* **(2002)**.................................................................................................................. 14

PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

# I. __INTRODUCTION__

In its Motion for Summary Judgment, Defendant United Air Lines, Inc. (hereinafter, "UAL") continues in its assertion that Plaintiffs' "canceled" their reservations on April 30, 2006 and received a full "refund" for that cancellation from UAL, despite the fact that UAL's PMK has testified the reservations were not cancelled and no refund was given. DECLARATION OF COLLEEN O'BRIEN IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Exhibit 32, p. 52:12-14; 96:18-21. By now, it should be clear that the April 30, 2006 cancellation letter was irrelevant to anything that transpired after it was sent because UAL did not do anything with it. See e.g., Declaration of Colleen O'Brien in Support of Motion for Summary Judgment, Exh. 5.

The Declaration of Mina Taheri, United's "Person Most Knowledgeable", submitted in support of Defendant's Motion, contains pure speculation and hearsay about the facts and circumstances surrounding Plaintiffs' e-tickets that are flatly contradicted by all the documentary evidence. However, even Ms. Taheri concludes, "Your Declarant's investigation has revealed that the issuing bank, Chase Credit Card Company made a mistake and never looked at the original charge back…At this time UNITED has been owed the sum of Eight Hundred Thirty Eight Dollars and Thirty Eight Cents ($838.38)(for the second debit) since June 22, 2006."[1] DECLARATION OF MINA TAHERI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ¶10.

With this unsupported, speculative hearsay statement UAL tacitly admits to its own negligence, but blames the "Chase Credit Card Company". What is undisputed at this point in the litigation is that the only parties who are clearly blame-free in this transaction are Plaintiffs, who are still out the price of their cover for tickets purchased at a higher rate.

---

[1] Even this assertion is provably false, as Plaintiffs did not contest the second charge until after July 19, 2006, when they were refused boarding by UAL. Decl. of Colleen O'Brien in Support of Opposition, Exhibit 33.

## II.    COUNTERSTATEMENT OF FACTS

*[Please refer to the facts as set forth in Plaintiffs' Motion for Partial Summary Judgment.]*

UAL states in its motion for summary judgment, "Ms. O'Brien's complaint is unclear as to whether she claims the June 3, 2006 email memorializes the alleged April 23, 2006 agreement or whether the June 3, 2006 email is the April 23, 2006 agreement."  As explained in Plaintiffs' Motion for Summary Judgment, the April 23, 2006 reservation is irrelevant to UAL's breach of contract.  It is undisputed by competent evidence that UAL entered into a second agreement with Plaintiffs on June 3, 2006, whether that agreement was written or oral.

UAL sent two confirmations to Plaintiffs on June 3, 2006 confirming the second, separate transaction.  The two confirmations support Ms. O'Brien's account of the phone call she had with UAL on June 3, 2006, right before the two new confirmations were sent.  Declaration of Colleen O'Brien in Support of Motion for Partial Summary Judgment, Exhs. 9 & 10.  UAL's own Passenger Name Record indicates that these new confirmations were sent at the request of Ms. O'Brien.  Declaration of Colleen O'Brien in Opposition to Defendant's Motion for Summary Judgment, Exh. 34.

The first of those June 3, 2006 confirmations—sent at 11:25 a.m.—reflects the fact that Plaintiffs were "rebilled" by UAL for the transaction.  The email describes itself as an "E-Ticket Receipt" and lists billing information such as the fare price and the credit card number.  The fare details are listed, as is the charge.  The reservation issue date is described as "23 APR 06" (the date of the original reservation which UAL admits was never canceled), but there is nothing to indicate this charge is an old charge, as it appears as a "receipt".  The second confirmation—sent at 11:38 a.m.—does not contain an e-ticket receipt, as does the first.  However, this email contains the seat assignments Plaintiffs requested.

The two June 3, 2006 emails completely support Ms. O'Brien's account of what transpired that morning: she called UAL, UAL said it would honor her seat assignments and rebill her, she gave UAL her credit card, UAL sent her two emails—one with the rebill and one

with the new seats, exactly as she had transcribed them from the phone call. Declaration of Colleen O'Brien, Exh. 8. In other words, UAL contracted with Ms. O'Brien and accepted her credit card number as payment, and rebilled the credit card—on June 3, 2006.

According to UAL's statement of facts, UAL "was debited the sum of Eight Hundred Thirty Eight Dollars and Thirty Eight Cents ($838.38) on [April 30, 2006]", pursuant to Ms. O'Brien's cancellation letter. This is false and contradicted by UAL's own PMK: "On May 26, 2006, UAL was debited the total amount of Eight Hundred Thirty Eight Dollars and Thirty Eight Cents ($838.38)." Declaration of Mina Taheri, ¶5. The debit did not happen until the credit card company resolved the first dispute in Ms. O'Brien's favor.

UAL claims that on June 3, 2006 it contacted Plaintiffs "regarding a schedule change". This is statement is false and not supported by credible evidence: Ms. O'Brien contacted UAL on that date to check the status of her tickets. Declaration of Colleen O'Brien in Support of Motion for Partial Summary Judgment, ¶¶16-19.

UAL states, "On or about June 3, 2006, plaintiffs' credit card company may have rebilled O'BRIEN's credit card in the amount of $838.38. However, UNITED had no part in that rebilling and was not credited for that amount." According to the Declaration of Colleen O'Brien, the rebill on the account happened the same day—June 3, 2006—that UAL said it would rebill her for her new purchase, the same day it emailed her two new confirmations reflecting the rebill, and the same day Ms. O'Brien spoke with a UAL agent who accepted payment over the phone and said she would be rebilled. Whether UAL billed Plaintiffs credit card in the correct manner is not known to Plaintiffs. What is known is that UAL placed those June 3, 2006 charges on Plaintiffs' card, as it said it would.

Plaintiffs do not dispute that UAL was debited twice in the amounts $838.38. It should have been because Plaintiffs were billed twice (and paid the bill) and eventually disputed the charges twice. The first time was on or about May 1, 2006. The second dispute was on or about July 19, 2006, after Plaintiffs were refused boarding or any other accommodation by UAL. Declaration of Colleen O'Brien in Opposition to Motion for Summary Judgment, Exh. 33.

III.        ARGUMENT

**1.  The Only Admissible Documentary and Testimonial Evidence in this Case Indicates Good Consideration and a Valid Contract.**

Summary judgment must be denied UAL because it is clear that Plaintiffs have credible evidence to indicate that they entered into a contract with UAL on June 3, 2006, and, for the purposes of UAL's motion, it is clear there is a genuine issue of material fact surrounding what transpired on June 3, 2006.

UAL states in its motion: "There are no references to the cost of tickets [in the June 3, 2006 email]."  This is not true; as explained above, the fare and receipt are described in detail on Exhibit 9.  UAL claims Plaintiffs "refused" to pay for their tickets: all available evidence indicates that they did pay for their tickets.  Declaration of Colleen O'Brien, Exh. 11.  If UAL was negligent in collecting its payment from the credit card company, as it seems to claim, that alleged neglect has nothing to do with Plaintiffs, who paid for their tickets on June 3, 2006 and paid their entire credit card bill on June 10, 2006.   Negligent non-receipt of payment is not a defense to a breach of contract action.

UAL tells this court, "Plaintiffs have not produced any evidence that they made a second payment to UNITED…Accordingly, plaintiffs cannot establish the existence of *consideration* for any contract between themselves and UAL."  In making this statement, UAL continues to ignore the following evidence:

- Declaration of Colleen O'Brien stating she contacted UAL by phone on June 3, 2006 to check the status of her reservation and that UAL offered to honor her request for seat assignments;
- Declaration of Colleen O'Brien stating that on June 3, 2006, the UAL agent told that her credit card would be charged for the new tickets and that the charge would appear as a "rebill" on her statement;
- PNR of UAL confirming that the telephone conversation took place on that date;
- Two email confirmations from UAL that confirm O'Brien's account—one with billing information, the other without, one with seat assignments, the other without;

PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

- Electronic Ticket History of UAL indicating that on June 3, 2006, the reservations were "revalued" Declaration of Colleen O'Brien in Opposition to Motion for Summary Judgment, Exh. 35;
- Credit Card Statements of Colleen O'Brien showing a UAL "rebill" on June 3, 2006;
- Itinerary of July 14, 2006 indicating a ticketed, confirmed reservation.

Assuming this is a bilateral contract, there was consideration for a contract: O'Brien agreed to allow her credit card to be billed. California Civil Code section 1605 defines "good consideration"' as follows: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor is a good consideration for a promise." Civil Code section 1614 provides: "A written instrument is presumptive evidence of consideration." Civil Code section 1615 provides: "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." As should be obvious to Defendant, one's own negligent failure to confirm and/or procure payment does not equal a lack of consideration.

UAL has not met its burden of showing a "lack of consideration" for this contract. There is evidence, both in the form of Ms. O'Brien's witness testimony that UAL intended to rebill her, and Ms. O'Brien's credit card statements that UAL rebilled her for the tickets. In actual fact, UAL did rebill Plaintiffs for the second transaction. Whether UAL performed this rebilling negligently or did it out-of-accord with its own procedures is beside the point. Whether it is negligent in keeping track of its funds is beside the point.[2] There is no lack of consideration because Plaintiffs agreed to allow UAL to charge their credit card for this contract (and it did).[3]

---

[2] Plaintiffs find it somewhat hard to believe that the "World's Second Largest Airline" has computer software so poor that it apparently loses track of thousands of dollars in lost passenger revenue per year without any ability to track the loss outside of the discovery process. UAL did not attempt to recover from the credit card processor what it claims is non-payment from the credit card company until January 2008.

## 2.  The Declaration of Mina Taheri Submitted in Support of Defendant's Motion for Summary Judgment Does Not Contain Relevant Admissible Evidence.

For the reasons detailed in Plaintiffs' Objections to Defendant's Evidence Submitted in Support of Motion For Summary Judgment, the Declaration of Mina Taheri is unsupported by a proper foundation, indicates a lack of knowledge, is based almost entirely on speculation, and is full of irrelevant and hearsay statements.  For these reasons, the court is requested to strike the Declaration of Mina Taheri in its entirety.

Even if everything Ms. Taheri stated in her declaration were somehow true, at best, her testimony establishes that UAL was negligent in keeping its accounts.  Nothing that she says in her declaration regarding negligence or fault can be attributed to Plaintiffs.  At most what is indicated is negligence on the part of UAL, and perhaps Chase Bank (this last according to UAL), none of which has anything to do with Plaintiffs.[4]

Moreover, Ms. Taheri's declaration is incompetent and suspect.  She is not familiar with any of the facts surrounding Plaintiffs' reservations and tickets: she is not a witness to anything, and she did no research into this matter until December 2007 at the earliest.  Declaration of Colleen O'Brien in Opposition to Motion for Summary Judgment, Exh. 32, 147:4-15.  In addition, her statements about these incidents are contradicted by UAL's own documents.  For example, she states that "on or about April 30, 2006, O'BRIEN disputed the aforementioned charges with her credit card company and was credited the aforementioned amounts(s)."  This

---

[3] In accordance with California Civil Code section 3546, things happen in according to the ordinary course and habits of life.  United's position that Chase Bank vice UAL spontaneously billed Plaintiffs in United's name on June 3, 2006, and spontaneously and coincidentally unbilled UAL on July 19, 2006 defies logic, the evidence, and common sense.

[4] Two additional judicial maxims are arguably applicable here, if UAL's farfetched interpretation of the facts is to be believed.  The first is Civil Code section 3516, stating that, "Acquiescence in error takes away the right of objecting to it."  UAL apparently acquiesced in this alleged billing error for over a year-and-a-half.  The other is Civil Code section 3543, providing, "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

statement is provably false: the credit card was credited for the first transaction on or around May 29, 2006.   Declaration of Colleen O'Brien in Support of Motion for Partial Summary Judgment, Exh. 7.   In paragraphs 6, 7 and 8 of her declaration, Ms. Taheri speculates about what Chase Bank did, in this case—as she argues, spontaneously "rebill" O'Brien.  She does not explain why Chase Bank would "rebill" in the name of "UNITED AIR" on its own.  She provides no documents to support her statement that "UNITED was not credited for that amount."

Her speculation is based entirely on her reasoning that, if UAL had been responsible for the rebill, it would have done it correctly and would have received its money; therefore, UAL could not have been responsible.  She also speculates based on citation to no documentary evidence whatsoever,  "On June 3, 2006, since Plaintiffs still had a valid reservation but not a valid ticket, UNITED contacted O'BRIEN to advise of a schedule change."  This statement lacks any foundation and is provably untrue.  It is supported by no document.  As demonstrated by the Declaration of Colleen O'Brien, O'Brien contacted United, not the other way around.  If United wants to dispute O'Brien's first-hand witness account, it needs to do that through competent documentary or witness testimony, such as that of the agent who spoke to O'Brien that day or through a recording of that call—not through the uninformed speculation of United's "Senior Analyst with Credit Card Process and Disputes", who is making up a version of events somewhat favorable to UAL a year-and-a-half after the event, having performed an investigation in December 2007 (though surprisingly still revealing UAL's negligence and misrepresentations and Plaintiffs' lack of fault).

### 3. Plaintiffs Can Establish Fraud and Misrepresentation as They Have Been Repeatedly Lied to and/or Unreasonably Misled By UAL

UAL's arguments surrounding fraud mostly depend on its arguments against the existence of a valid contract.  As Plaintiffs have established, they did have valid tickets and a contract existed.  Even if for some reason it did not, Plaintiffs could proceed on a detrimental reliance theory, or one based on a breach of convent of good faith and fair dealing.

More importantly, there is ample evidence that UAL is liable to Plaintiffs under a fraud/negligent misrepresentation theory, because prior to July 19, 2006 (the date of the flight) it repeatedly represented to Plaintiffs that they had valid, paid for reservations: UAL represented that it would rebill Plaintiffs for the tickets, and sent them confirmations indicating that it had. Other evidence of fraud/misrepresentation includes:

- UAL's Itinerary of July 14, 2006 indicates a ticketed, confirmed reservation;
- Plaintiff O'Brien called UAL several times before the day of the flight and was told that she had a valid, paid-for reservation;
- It was only after Plaintiffs were refused boarding that UAL claimed that Plaintiffs did not have valid tickets. Regardless of UAL's legal position as to whether the reservations/tickets were "valid" in its eyes because of its own alleged internal failure to keep track of its accounting, it is clear that Plaintiffs were told different, conflicting things about their tickets at different times, and that they relied on the statements of UAL agents to their detriment.

It is important to note that UAL never mentioned cancellation, refunds, or lack of consideration in any of its replies to Plaintiffs in the year before they filed suit. Declaration of Colleen O'Brien in Support of Motion for Partial Summary Judgment, Exhs. 21, 24 & 25. It is also important to point out that UAL's representations in the past to this court about the tickets being "cancelled" are not true. UAL claims for the first time here that Plaintiffs were denied boarding because their tickets were not "paid for". Here, UAL argues, "UNITED's assertion that Plaintiffs did not have a valid ticket is true." If that is the case, then there is plenty of evidence to suggest that UAL could be liable to Plaintiffs under a theory of misrepresentation, the elements of which are stated in 1-1900 CACI 1903:

1. That defendant represented to plaintiff that an important fact was true;

2. That defendant's representation was not true;

3. That defendant had no reasonable grounds for believing the representation was true when [he/she] made it;

4. That defendant intended that plaintiff rely on this representation;

5. That plaintiff reasonably relied on defendant's representation;

6. That plaintiff was harmed; and;

7. That plaintiff's reliance on defendant's representation was a substantial factor in causing [his/her/its] harm.

     If what UAL is saying here is true, specifically, that Plaintiffs did not have valid tickets after May 29, 2006, then facts that would tend to support a claim for fraud and/or misrepresentation exist because UAL repeatedly represented, in documents and orally between May 29, 2006 and July 19, 2006 that Plaintiffs had valid tickets.  This was the case even though Plaintiffs tickets had been purportedly destroyed by UAL on July 6, 2006 without Plaintiffs' knowledge or consent.  Plaintiffs were never informed of this destruction action.  Declaration of Colleen O'Brien in Opposition to Defendant's Motion for Summary Judgment, Exh. 32, 93-94. Whatever the case, UAL represented to Plaintiffs at various times before the flight that they had valid tickets and at various times after the flight that they did (and in some cases, as in the case of Ms. Afkari, that they did have valid tickets that had been "printed").  At what point UAL was telling the truth as it saw it and at what point it was misrepresenting the facts to Plaintiffs is not relevant on its Motion for Summary Judgment.   The evidence of the misrepresentations is sufficient to defeat UAL's Motion for Summary Judgment as to this claim.

## 4.  Plaintiffs' Claims Are Not Preempted by the Airline Deregulation Act

     Under the supremacy clause of the United States Constitution (art. VI, cl. 2) federal law preempts state law where Congress so intends.  *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 153 (1982).  Courts are reluctant to infer preemptions, and it is the burden of the party claiming that Congress intended to preempt state law to prove it.  *Elsworth v. Beech Aircraft Corp.*, 37 Cal.3d 540, 548 (1984).

     UAL's preemption argument under the Airline Deregulation Act (hereinafter, "ADA") relies entirely on the much-criticized *Morales* and *Wolens* decisions in order to escape liability. Before discussing the actual legal scope of those decisions as developed and applied by courts to

preemption claims, it is important to note at the outset of this discussion the outright factual differences between *Morales* and *Wolens* and the present case.

In *Morales*, a group of states' attorneys general were seeking to sue state laws banning deceptive advertising by the airlines, which, as the evidence in that case demonstrated, would actually impact the price of an airline ticket. In *Wolens*, the court considered two consolidated state court class actions brought by participants in American Airlines' frequent flier program. Those plaintiffs contended that changes in American's program violated the Illinois Consumer Fraud Act. The court first found that the claims related to "routes" and "services"; that is, access to flights and upgrades. *Wolens*, at 225. The court then determined that the Consumer Fraud claims were preempted because the ADA had intended to leave marketing mechanisms to the airlines, not to the states. *Id.* at 228. *Wolens*' preemption had to do with an airline's services, specifically, frequent flyer miles programs.

In an influential *Duke Law Journal* article criticizing the apparently broad potential for the application of dicta in *Morales* and *Wolens*, Daniel H. Rosenthal observed, "[T]he Deregulation Act's language and legislative history do not manifest a clear congressional intent to preempt a vast majority of state law claims, including those individual, high-occurrence claims that relate to airline negligence or fraud." *See Legal Turbulence: The Court's Misconstrual of The Airline Deregulation Act's Preemption Clause and The Effect On Passengers' Rights, Daniel H. Rosenthal*, 51 Duke L.J. 1857, 1873 (2002).

Here, UAL only appears to be claiming this case could have an impact on its <u>prices</u>, stating: "It is not difficult to determine that if plaintiffs' consumer protection claims were to succeed, state regulation of the manner in which the airline competes for passengers and tickets them would have an immediate and massive effect on prices charged by air carriers."[5] In essence, UAL appears to be arguing its inability to commit fraud and misrepresentation as it has in this case could have an effect on its ability to advertise, compete in the industry, and impact the prices it charges for tickets. It does not explain the effect on "price" beyond this sentence or present any evidence as to why this would be the case should Plaintiffs' consumer claims go forward.

---

[5] UAL does not appear to be arguing that this case would have an impact on its routes or services.

The *Power Standards* case cited by Defendant is also inapplicable to this case by its own terms, "[T]his case involves neither passengers nor run-of-the-mill tort claims…".  *Power Standards* at 1047.  *Power Standards* was a state court case between a carrier and a shipper, and only involved breach of contract claims.

Passengers, on the other hand, have routinely been permitted in this and other jurisdictions to pursue their contract, negligence and other tort claims against airlines.  *Vinnick v. Delta Airlines,* 93 Cal.App.4[th] 859 (2001)*; Romano v. American Trans Air,* 48 Cal.App.4[th] 1637 (1996); *Travel All Over the World v. Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996) (breach of contract and defamation claims by travel agent based on cancellation of group reservations and false statements to clients); *Aquino v. Asiana Airlines*, Inc., 105 Cal.App.4[th] 1272 (2003)(personal injury causes of action based on refusal to transport a disabled passenger not preempted); *Duncan v. Northwest Airlines, Inc.,* 208 F.3d 1112 (9th Cir. 2000) (flight attendant's class action tort suit for breach of state law duty to provide a safe working environment by allowing smoking on transatlantic flights not preempted); *Polakoff v. American Airlines, Inc.,* 2003 U.S. Dist. LEXIS 18558 (N.D.Cal. 2003) (no express preemption under ADA for pilot's state law discrimination claim).

The Ninth Circuit has extended this conclusion to hold the ADA does not preempt discrimination claims based on the refusal to allow a disabled passenger to board an aircraft without a health certificate.  *Newman v. American Airlines*, 176 F.3d 1128, 1130-1131 (9th Cir. 1999).

As Defendants acknowledge, the leading and instructive case in the Ninth Circuit is *Charas v. Trans World Airlines, Inc*, 160 F.3d 1259 (9th Cir. 1998).  This case adopts the analysis suggested in Professor Rosenthal's article and has been followed by other circuits.   The Ninth Circuit Court of Appeals has adopted an approach defining service for purposes of the Acts' preemption clause as "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo or mail."  *Id.* at 1261.  Presumably because of that holding, which would be fatal to its argument, UAL does not argue here that its "services" would be affected, but rather, its "prices".

Said the Court in *Charas*: "We now hold that in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airlines industry." *Id.* at 1261.  The court continued:

> It is evident that Congress's "clear and manifest purpose" in enacting the ADA was to achieve just that - the economic deregulation of the airline industry. Specifically, "the ADA . . . was designed to promote 'maximum reliance on competitive market forces.'" *Wolens*, 513 U.S. at 230 (*citing* 49 U.S.C. app. § 1302(a)(4)). The purpose of preemption is to avoid state interference with federal deregulation. *See id.* Nothing in the Act itself, or its legislative history, indicates that Congress had a "clear and manifest purpose" to displace state tort law in actions that do not affect deregulation in more than a "peripheral manner." *See Morales*, 504 U.S. at 390….Second, the savings clause, § 1506, which provides that "nothing . . . in this chapter shall in any way abridge or alter the remedies now existing at common law . . . ," read together with the preemption clause, evidences congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation. 49 U.S.C. app. § 1506 (recodified as 49 U.S.C. § 40120); *see also Morales*, 504 U.S. at 378.
> …
> Airlines' "rates" and "routes" generally refer to the point-to-point transport of passengers. "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of  transportation, and to the selection of markets to or from which transportation is provided (as in, "This airline provides service from Tucson to New York twice a day.") To interpret "service" more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended….We conclude that when Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct.

*Id.* at 1265-1266.

Not only are Plaintiffs claims <u>not</u> preempted by the ADA, UAL has not even attempted to meet <u>its</u> burden of establishing the effect of this case on either routes, rates, or services.  In a case from late last year, *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), the Ninth Circuit considered a case involving passenger negligence claims against the airlines for providing an unsafe seating configuration that caused the plaintiffs to develop deep vein thrombosis:

> The Airlines' preemption argument on the seating configuration claim presents a closer question. The Airlines argue that any reconfiguration of airplane seating would decrease the number of seats and thus require a significant increase in ticket prices to offset the loss in revenue. They assert that triggering this increase would amount to an indirect regulation of airline fares, which is precluded by the ADA. While the Airlines may ultimately be correct, we remand this claim to the district court for further development, because on the basis of the record before us, there is an insufficient factual basis on

which to conclude that any seat reconfiguration would have what the Supreme Court has described as the "forbidden significant effect" on airline ticket prices. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992)....

*Id*. at 469.

In *Witty*, 366 F.3d 380, which presented the same legal issues before us now, the Fifth Circuit dismissed the plaintiffs' seating configuration claim on preemption grounds, observing that the plaintiffs effectively conceded that any seat reconfiguration would materially affect costs, leading to a significant increase in airfares. *Id*. at 383. In this case, however, Plaintiffs have not conceded that any seating reconfiguration would result in a significant effect on airline ticket prices or would interfere with the forces of competition. The Airlines have not yet produced any evidence on this issue, and we have no factual basis on which to judge the effect of any seating reconfiguration on prices. We thus cannot determine whether a seat reconfiguration would materially impact federal deregulation, which this court has determined is a prerequisite for finding preemption. *See Charas*, 160 F.3d at 1265-66.

*Id*. at 475.

In this case, Defendant does not even bother to try to explain why or how Plaintiffs' consumer claims would impact airline prices. It simply states that is it so. Defendant has not even begun to meet its burden on summary judgment. At least the Defendant in *Montalvo* made an actual argument that was unsupported by evidence. UAL just argues that the "price" impact on the airlines stemming from this case is obviously "immediate and massive" without any further explanation or citation. It does this even though as a factual matter there is absolutely no dispute about price in this case. It argues the price impact is "not difficult to determine", yet it offers the court no means by which to determine such an alleged impact.

No other preemption theory is argued or briefed by Defendants, other than express preemption. There is no evidence or argument presented by Defendants to show that any preemption exists in this case. Courts have acknowledged the distinction: "Although the Federal Aviation Administration requires airlines to provide "safe and adequate" service to their passengers (49 U.S.C. 41702), both the FAA and the ADA are silent when it comes to a passenger's private right of action for damages suffered as a result of a violation of this standard." See *Romano*, *supra,* at 1643; *citing* 14 C.F.R. 13.1-13.27; 302.200-302.218.

Where the airlines have a legitimate interest to protect (the right to advertise their rates, set their routes, determine whether to provide food service on a particular flight) the states cannot interfere. But where there is no legitimate interest needing protecting—as is the case when the

issue is negligence—there is no preemption.  *Aquino, supra*, at 1284, *quoting Romano, supra*, at 1645.  Presumably fraud and negligence would rate equally in this determination.

Here, Plaintiffs have not brought a class action lawsuit demanding changes to ticketing or programs of UAL that could arguably have an effect on prices.  They are not arguing that the price of tickets should be changed or taking issue with the price charged by UAL in this case for these tickets.  They agreed to that price ($858.38) and paid it.  The dispute here is not about price; it appears to be a purely factual one about whether the agreed upon undisputed price was actually paid, as well as how UAL responded to Plaintiffs' legitimate complaints.  There is no dispute about the point-to-point transport of passengers: everyone agrees that Plaintiffs did not fly.  Plaintiffs' claims are purely on-the-ground, garden-variety, emotional distress, fraud, breach, and consumer claims that have nothing to do with deregulation or any price charge or service rendered by an airline.  Plaintiffs did not get off the ground or beyond the check-in counter.  UAL stands in no different position in this case from a California used car lot or a California insurance company—the allegations here involve on-the-ground fraud and misrepresentation.

Plaintiffs are not asking that this court order UAL to do anything aside from compensate them for their damages and expenses and order a retraction of UAL's libel.  They are not asking for a remedy that would "adversely affect the economic deregulation of the airlines" and the "forces of competition" within the airline industry.  They are not asking this court to order adjustments to UAL's programs or its advertising.  They are not asking this court to do anything that would impact seating or the configuration on any one of UAL's planes.  Rather, they seek a remedy, other than in contract and common law tort, for the damage UAL has done to them.

If deregulation does not preempt claims that potentially impact the number of seats on a plane, then surely it does not preempt claims where the passenger does not get anywhere near a plane due to the airline's misrepresentations.  Deregulation is not a license for UAL to commit fraud, and there is no reason why this consumer law action, which in no way involves an actual plane, rate, route or service, should be preempted.  Deregulation is not a license for UAL to engage in frivolous defenses, as it has here, because it thinks Plaintiffs can never recover

anything beyond the price of a ticket.  Deregulation was never intended to provide complete immunity for UAL from misrepresentation and negligence.

Prices of tickets will not, could not, be impacted if UAL is ordered to compensate Plaintiffs for the wrongs it has committed, even if that results in the payment of attorney's fees and punitive damages.  There is no "hidden significant effect" on airline prices here.  And the multiple abuses in this case cry out for a consumer remedy.  UAL has not met its burden of demonstrating either preemption or an impact on the price of airline tickets.  All of Plaintiffs claims should be allowed to proceed.

**5.  There Are Facts to Support Negligent Infliction of Emotional Distress a Jury Could Find that UAL's Treatment of Plaintiffs is Outrageous.**

Plaintiffs' claims to emotional distress damages do not depend on the breach of contract claim.  Plaintiffs have alleged independent torts, such as misrepresentation and fraud that caused them harm and are not expressly preempted.  Plaintiffs have alleged that UAL's treatment of them, their abuses, and their misrepresentations have caused both of them to suffer emotional distress, the fact of which is undisputed.  At a minimum, Plaintiffs could establish negligent infliction of emotional distress, the elements of which are, negligence, suffering of serious emotional distress, and causation.  The only disputed element here is negligence.  The preceding paragraphs establish UAL's negligent misrepresentations to Plaintiffs as at minimum, as contested factual issue.  More discovery will perhaps shed light on the intentional nature of UAL's misrepresentations, but negligence is undoubtedly clear.

In a negligence action, damages may be recovered for serious emotional distress unaccompanied by physical injury.  *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 923 (1980).  Emotional distress includes suffering, anguish, nervousness, grief, anxiety, worry and humiliation.  There is no dispute that Plaintiffs suffered that type of distress in association with UAL's actions.

//

//

**IV.     CONCLUSION**

Plaintiffs' extensive documentary evidence, and UAL's lack of it, speaks for itself.  It is amazing that UAL believes it can make this claim and maintain any credibility, "The basic fact is that UNITED is not responsible for plaintiffs' situation."   Defendant's Motion for Summary Judgment at 14:25.  Contrary to that statement, the actual admissible facts in this case tell the true story of UAL's negligence and refusal to own up to it.

One aspect of UNITED's conclusion deserves comment: its unsupported statement, intended as a pejorative: "It is apparent that this case has assumed cause célèbre status for plaintiffs."  A "cause célèbre" is a controversy that attracts great public attention.  Plaintiffs are unaware of any public attention that has been paid to the matter of UAL's breach and subsequent abusive treatment of Plaintiffs.

Because UAL cannot resist speculating in its filings about Plaintiffs' motivation in holding UAL to account for its several wrongs, Plaintiffs feel compelled to discuss this last insult regarding their motivations.  Plaintiffs are aware that UAL has the highest instances of customer complaints of any airline.  Declaration of Colleen O'Brien in Opposition, Exh. 37.  Plaintiffs are aware that UAL ranks highest among the airlines for complaints to the Department of Transportation involving refunds.  Declaration of Colleen O'Brien in Opposition, Exh. 38.  Plaintiffs are aware of documented refund problems such as those reported in Exhibit 39, as well as websites such as these, documenting nearly identical circumstances to Plaintiffs': http://untied.com/cgi-bin/scan.pl (a list of complaints by UAL passengers for June 2006, including refund problems).  Plaintiffs do not include these exhibits as evidence, but offer them to clarify for the court what their motivation is in pursuing their claims, as UAL keeps attempting to impugn their motives as somehow impure or improper.

Plaintiffs do not believe that passengers regularly getting ripped off hundreds or thousands of dollars by an airline that refuses to talk to them concerning their problems is a small or unimportant matter.

//

//

Plaintiffs were dragged into this court through no action of their own, but now that they are here, they believe they are in position to highlight UAL's bad conduct to this court.  Most of all, they would like to be compensated for the harm UAL has done to them.


Date:  February 08, 2008                          Respectfully Submitted,


_____/s/_____
Colleen O'Brien
O'Brien & Kelleher, LLP
Attorney for Plaintiffs