1 | WORTHE HANSON & WORTHE
A Law Corporation
1851 East First Street, Ninth Floor
Santa Ana, California 92705
Telephone (714) 285-9600
Facsimile (714) 285-9700
jworthe@whwlawcorp.com
tworthe@whwlawcorp.com

JEFFREY A. WORTHE, SBN 080856
JOHN R. HANSON, SBN 149794
TODD C. WORTHE, SBN 177452

Attorneys for Defendant, UNITED AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

| NOAH BUTLER and COLLEEN O'BRIEN, | CASE NO.: C07-4369(CRB) |
|---|---|
| Plaintiffs, | |
| v. | DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |
| UNITED AIR LINES, INC., and DOES 1 through 100, Inclusive, | |
| Defendants. | |
| | DATE: February 29, 2008 |
| | TIME: 10:00 a.m. |
| | DEPT.: 8 |

**COMES NOW,** Defendant, UNITED AIRLINES, INC. ("UNITED") and submits the following Memorandum of Points and Authorities in Reply to Plaintiffs Opposition to Defendant's Motion for Summary Judgment.

///
///
///
///
///

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. PLAINTIFFS CANNOT SHOW THE EXISTENCE OF A CONTRACT BETWEEN THEMSELVES AND UNITED.

In Opposing UNITED's Motion for Summary Judgment, plaintiffs argue at length that Ms. O'Brien's various and alleged dealings with UNITED personnel establish the existence of a contract. In making this argument, plaintiffs claim Ms. O'Brien's declaration as to hearsay telephone conversations with UNITED personnel, Ms. O'Brien's unsupported "explanations" of what she understood various email communications to signify, and an alleged "rebill" on her credit card statement create an issue of fact as to whether UNITED received any consideration for the alleged contract. Plaintiffs' evidence is wholly insufficient.

As is set forth at length in UNITED's moving papers, Ms. O'Brien paid UNITED for tickets for herself and her husband once. O'Brien subsequently disputed payment, and instructed her credit card company that she would not pay for the tickets. Ms. O'Brien wrote to UNITED, stating, "You are on notice that if United makes any attempt to assert a right to those disputed charges based on an assertion of nonrefundability, I will bring a legal action against United for damages." The undisputed evidence is that the funds paid by O'BRIEN were debited from UNITED and returned to plaintiff. Despite their attempt to paint their original refusal to pay for tickets as somehow unrelated to a determination of this Motion, the fact remains that UNITED was paid for tickets on only one occasion. Plaintiffs do not dispute that the money they paid for those tickets was returned to plaintiffs through their credit card company.

As further set forth in UNITED's moving papers, UNITED, through its employee, MINA Taheri, researched the history of plaintiffs' reservation with UNITED. Ms. Taheri, through review of UNITED's business records, has testified under penalty of perjury that once its account was debited, no other consideration was ever received by UNITED for tickets for O'BRIEN and BUTLER. Ms. Taheri further

testified that plaintiffs' scenario of being "re-billed" after disputing her charges is inconsistent with UNITED's practice. Although the procedure is slightly arcane, Ms. Taheri testified that if UNITED re-issues tickets after a credit card dispute the ticket number is issued beginning with "916" instead of "016." O'BRIEN and BUTLER were issued ticket numbers bearing numbers "0162140207653" and "0162140207654" on April 23, 2006. No other tickets were issued to plaintiffs.

Further, plaintiffs' credit card company, Chase, has confirmed UNITED was *debited* for the cost of plaintiffs' tickets on two occasions. Exhibit "B" to Declaration of Mina Taheri, email dated January 4, 2008.) Further, as Ms. Taheri testified, Chase informed UNITED that although it could verify UNITED had been debited on two occasions, "Unfortunately, we are unable to verify if the cardholder received two credits." Thus, while Chase can verify UNITED did not receive money for tickets from plaintiffs, Chase cannot verify its accounting as to plaintiffs is correct. (Exhibit "B" to Declaration of Mina Taheri, email dated January 4, 2008.)

It is possible plaintiffs believe they purchased tickets on UNITED after Ms. O'BRIEN's original dispute. It is also possible a charge on their credit card statement indicated a "rebill." However, plaintiffs' subjective belief that UNITED was paid is not sufficient to create a contract between plaintiffs and UNITED sufficient to support plaintiffs' complaint for damages. UNITED has demonstrated it was not paid for travel by O'BRIEN and BUTLER. Plaintiffs have produced evidence of Ms. O'BRIEN's alleged belief that she re-purchased tickets, but cannot dispute UNITED's evidence that it was not paid. Accordingly, plaintiffs cannot show consideration for the alleged contract and consequently cannot show a subsequent breach.

## 2. **PLAINTIFFS DID NOT ENTER INTO ANY ORAL AGREEMENT WITH UNITED.**

Plaintiffs claim they entered into an agreement with UNITED on June 3, 2006, "whether that agreement was written or oral." (Plaintiff Opposition, p. 6, lines 9, 10.)

UNITED has demonstrated that it did not receive consideration for tickets after the first payment and subsequent refund to plaintiffs. In addition, plaintiffs did not enter into any oral agreement for the purchase of tickets and travel with UNITED at any time. In their Motion for Partial Summary Judgment, plaintiffs admit any contract they made have made with UNITED was subject to the terms and conditions of UNITED's Contract of Carriage. They state, "An airline ticket is a contract. [Citation.] That contract is governed by the terms of the Contract of Carriage. (Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, p. 11, lines 6, 7.) UNITED's contract of carriage is attached as Exhibit 28 to Ms. O'BRIEN's declaration in support of plaintiffs motion. The contract of carriage establishes at section 1, Application of Tariff, item F) that UNITED employees do not have authority to alter, modify, or waive any provision of the contract of carriage unless authorized by a corporate officer of UNITED. Further UNITED's agents are only authorized to sell tickets for air transportation pursuant to approved fares, rules and regulations of UNITED. Plaintiffs do not allege they spoke with a corporate officer of UNITED during their alleged discussion on June 3, 2006. Thus, pursuant to the contract of carriage that plaintiffs admit controls, no other contract or modification to the contract of carriage O'BRIEN may contend exists can be enforced against UNITED. A somewhat similar issue arose in *Wittenberg v. Eastern Airlines, Inc.*, 126 F.Supp 459 (D.C.S.C. 1954.) There, plaintiff asserted he had been assured by a representative of the airline that he would arrive in time to make a connecting flight, and that the connecting flight would be held, if necessary, for him. Plaintiff missed his flight and sued for damages, including consequential damages. The airline moved for summary judgment on the grounds that the alleged promise made by its employee was of no effect. The airline's tariff provided, "no agent, servant or representative of the carrier has authority to alter, modify or waive any provision of the [conditions of] contract." The court held that this tariff provision precluded plaintiff from relying on any alleged representation made by an airline

employee. Similarly here, even if plaintiff had admissible evidence regarding an agreement with a UNITED employee, the terms of transportation preclude that agreement from having any effect on UNITED.

3. **THE DECLARATION OF MINA TAHERI IS WHOLLY ADMISSIBLE.**

Plaintiffs have objected to the declaration of Mina Taheri on several grounds, none of which withstand scrutiny. Mina Taheri has provided testimony to the court in the form of her Declaration that she is Senior Analyst with UNITED's Credit Card Process and Disputes department. She has testified that she has knowledge of the allegations of the complaint in the instant action, and that her job duties include review and research of issues of crediting and debiting related to credit card disputes.

Ms. Taheri has testified that the documents on which she relied in her investigation of plaintiffs' claims are UNITED's business documents kept in the regular course of business. The documents are not hearsay by reason of the hearsay exception stated at *Federal Rules of Evidence*, Rule 803 (6), and they have been authenticated by Ms. Taheri. There is no basis for plaintiffs' objection to the declaration of Ms. Taheri.

4. **PLAINTIFFS CONSUMER LEGAL REMEDIES ACT CLAIMS ARE PREEMPTED.**

Plaintiffs complain that UNITED relies on the "much-criticized" *Morales* and *Wolens* decisions regarding express preemption under the Airline Deregulation Act. (Plaintiff Opposition, p. 13, lines 26, 27.) *Morales* and *Wolens* are the seminal *United States Supreme Court* cases on express ADA preemption. To UNITED's knowledge, neither *Morales* nor *Wolens* have been the subject of criticism that might prevent them from being the controlling authority on the issue before this court.

In arguing that ADA preemption does not apply, plaintiffs confuse two entirely issues that have arisen in the context of ADA preemption. The preemption statute as currently written provides in part that states may not enforce any "law related to a price, route, or *service* of an air carrier." (49 U.S.C. § 41713(b).) Following the

-4-

*Morales* decision, there was a period of time when courts throughout the circuits were struggling with the term "services" as used in the preemption statute. Was a negligence claim by a plaintiff who was struck on the head by baggage falling from an overhead bin preempted on the grounds the incident was related to an air carrier's baggage "service?" Some courts were willing to find "services" included such run of the mill negligence claims, many were not. After some false starts, in the Ninth Circuit, the decision in *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259 (9th Cir. 1998) settled the issue of how the term "services" would be construed under the ADA for this circuit, holding that laws related to the manner in which air carriers compete were preempted. Although the concept of economic deregulation is important, the *Charas* decision does not address the issue of direct state regulation of air carrier conduct. before this court.

In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed. 157 (1992) and then in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) the Supreme Court was not principally concerned with the meaning of the term "services," although the issue was raised. Rather, the court was looking to discern the intent and scope of the preemption statute. As was set forth in UNITED's moving papers, the preemption statute expressly precludes States from enforcing any "law, regulation or other provision" having the force and effect of "law *related to* a **price, route, or service** of an air carrier." (49 U.S.C. § 41713(b).) The *Morales* court state the basis for the inclusion of the preemption statute in the ADA was to "ensure that the States would not undo federal deregulation with regulation of their own. (*Id.* at 378.) The court in *Morales* had no difficulty finding that the use of state law penalties and fines by the states Attorneys General would have such an effect. Then, in *Wolens*, the Court singled out state consumer legal protection statutes as a means by which states could and would attempt to guide and police the marketing practices of the airlines - thus interfering with Congress's deregulation of the industry. (*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228.)

Such state interference was held to be preempted. Here, the Consumer Legal Remedies Act is indistinguishable in effect from the statute at issue in *Wolens* and recovery under the CLRA by plaintiffs is expressly preempted.

Plaintiffs raise issues related to whether tort remedies involving air carrier seating configuration can have the forbidden significant effect on ticket prices. The distinction plaintiffs fail to draw is between the *indirect state* regulation of price that would be the result of the imposition of tort liability for alleged negligent design of seating configurations and the *direct* state regulation of air carrier marketing worked by the imposition of fines and penalties under the Consumer Legal Remedies Act. The court in *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir.) was concerned with whether the effect of imposing tort liability for alleged negligent design of seating configuration of air carrier prices would have too tenuous an effect on air carrier ticket pricing to fall within the scope of the preemption clause. Here, where direct state regulation of air carrier marketing through the imposition of fines and penalties is at issue, no such analysis is necessary. The entire point of the express preemption provision of the Airline Deregulation Act was to prevent states from replacing the discarded federal regulatory system with new regulations of their own. As recognized by the court in *Power Standards Lab, Inc. v. Federal Exp. Corp.* (2005) 127 Cal.App.4th 1039, 1044, "when the state begins to change the parties' financial arrangements ... it is supplying external norms, a process that the national government has reserved to itself in the air transportation business." Here, there is no doubt that the Consumer Legal Remedies Act imposes external norms on the dealings between the parties. Accordingly, claims against an air carrier under that Act are preempted.

### 5. PLAINTIFFS MAKE NO ARGUMENT THAT THE MAGNUSON-MOSS ACT IS APPLICABLE.

UNITED argued in its moving papers that it is not liable to plaintiffs for a violation of the Magnuson-Moss Act. Plaintiffs make no argument in opposition. UNITED believes plaintiffs have abandoned this claim.

**6. CONCLUSION.**

Based upon all of the foregoing, UNITED respectfully requests the court grant summary judgment in its favor and against plaintiffs.

Dated: February 14, 2008                    **WORTHE HANSON & WORTHE**

By: _____
TODD C. WORTHE, ESQ.
Attorneys for Defendant, UNITED AIRLINES, INC.